108 F.3d 251
 97 Cal. Daily Op. Serv. 1679, 97 Daily Journal
D.A.R. 3149
Herman J. BLUEFORD, Plaintiff-Appellant,
v.
K.W. PRUNTY, Warden; K. Daniels; B.H. Moses; C. Basilio;
M.E. Bourland, Correctional Officer II at
Calipatria State Prison; Arnold
Trujillo, Defendants-Appellees.
 No. 95-56725.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 14, 1997.
Decided March 6, 1997.
 
 JoAnn Falgout, Streich Lang, Tucson, Arizona, for plaintiff-appellant.
 Richard R. Clouse, Cihigoyenetche, Grossberg & Clouse, Ontario, California, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California, Irma E. Gonzalez, District Judge, Presiding. D.C. No. CV-94-00364-IEG.
 Before: LAY,* GOODWIN and SCHROEDER, Circuit Judges.
 LAY, Circuit Judge:
 
 BACKGROUND
 
 1
 Herman J. Blueford is an inmate at Calipatria State Prison in California. Bishop H. Moses directly supervised Blueford at the Prison Industry Authority Laundry (PIA Laundry), where Blueford worked. According to Blueford, Moses often behaved and spoke offensively before inmate workers. Moses would make strong sexual suggestions accompanied by demonstrative actions; would grab inmates and pull their hands toward his genitals; would grab his own genitals and refer to oral sex; would pull his own pants up tightly and "demand" anal sex; and would feign martial arts strikes toward various parts of an inmate's body, including toward the groin area.
 
 
 2
 Most or all of this behavior was intended to be, and generally was, taken by inmates to be "playful." Even Blueford referred to the grabbing incidents as "play[ful]." Blueford, however, asserts that he believed some of Moses' statements to have been literal requests for oral sex. Moses never touched Blueford in a sexually offensive way. Blueford was, however, subject to Moses' feigned martial arts strikes, and was uncomfortable with Moses' physical conduct toward others.
 
 
 3
 In February 1994, Blueford entered Moses' office and requested ice. Moses denied Blueford's request and ordered him to leave. The two argued, and prison officers eventually escorted Blueford from the PIA Laundry. Moses filed a rules violation report against Blueford for the incident. The next day Blueford returned to the laundry to complain to laundry supervisor K. Daniels about Moses' report, and allegedly presented Daniels a "draft" copy of a civil rights complaint. Blueford was again escorted from the laundry.
 
 
 4
 Prison Lieutenant Arnold Trujillo conducted a disciplinary hearing regarding Blueford's refusal to leave the office on Moses' demand. Blueford called Moses as a witness and testified on his own behalf.[1] After the hearing, Trujillo found Blueford had committed a rules violation. As punishment, Blueford lost thirty days of good time credit and sixty days of yard time. He also lost his job at the PIA Laundry.
 
 
 5
 Blueford brought this action under 42 U.S.C. § 1983 against various prison employees. The district court construed his Third Amended Complaint as charging sexual harassment, deprivation of due process at the disciplinary hearing, and a claim for loss of funds from his prison trust account. The court granted the defendants' motion for summary judgment on the claims. As to the sexual harassment claim, the district court found that the defendants were qualifiedly immune from suit. The court also found no denial of due process regarding Blueford's trust account and denied as well his motion for declaratory relief.
 
 DISCUSSION
 Qualified Immunity
 
 6
 This court reviews a district court's grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must decide, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issue of material fact exists and whether the district court correctly applied the appropriate substantive law. Id. We also review the district court's qualified immunity decision de novo. Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994); Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996).
 
 
 7
 This court applies a two-part test to an asserted qualified immunity defense:
 
 
 8
 The first question is whether the right at issue is clearly established and stated with particularity.... The second question is whether the official could have had a reasonable belief that his conduct was lawful. If not, he is not entitled to qualified immunity. We answer the second question by determining whether "a reasonable officer" could have had the belief in question, not whether the individual officer involved actually thought his conduct was lawful.
 
 
 9
 Washington v. Lambert, 98 F.3d 1181, 1192 (9th Cir.1996) (citations and quotation marks omitted); see also Hunter v. Bryant, 502 U.S. 224, 227-28, 112 S.Ct. 534, 536-37, 116 L.Ed.2d 589 (1991) (per curiam).
 
 
 10
 Blueford asserts he was subject to physical sexual harassment. He maintains that the facts construed in his favor establish that "many of the inmate workers at the PIA Laundry (including Blueford) were physically harassed." Appellant's Supplemental Opening Br. at 12. Blueford admits Moses did not actually touch him, but contends Moses' physical handling of others made him "uncomfortable" and caused him "distress." He also casts the feigned martial arts contact toward him and others as threatening and therefore actionable as sexual harassment.
 
 
 11
 We believe Blueford asserts the right, as a male prisoner, not to be subject to a male prison official's immature sexually-based diatribes or to be the recipient of the prison official's feigned combative strikes. He suffered no physical contact and his attempt to stand in the shoes of the inmates Moses actually assaulted is without merit. To put it succinctly, he claims a right under federal law to be free of puerile and vulgar same-sex trash talk.
 
 
 12
 To defeat Moses' claim of qualified immunity, Blueford need not establish that Moses' behavior had been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Even putting aside the complicating factor that this incident occurred within the prison employment setting, compare Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir.1994) (holding black corrections officer could base employment discrimination claim on his firing after he refused to participate in prison's permitting only white inmates to shower after their work shifts), with Hale v. Arizona, 993 F.2d 1387 (9th Cir.1993) (en banc) (holding prisoners in work program are not entitled to minimum wage under the Fair Labor Standards Act), whether any employee could sustain a claim of same-gender sexual harassment under federal law was far from "established" at the time of this incident.
 
 
 13
 When the district court considered the defendants' summary judgment motion, it found the Fifth Circuit was the only United States court of appeals to have considered the issue. Blueford v. Prunty, No. 94-0364-IEG (S.D.Cal. Aug. 11, 1995) (order granting summary judgment in part (citing Garcia v. Elf Atochem N. Am., 28 F.3d 446 (5th Cir.1994))). In Garcia, the Fifth Circuit held that a male could not bring a harassment claim against his male supervisor under Title VII. 28 F.3d at 451-52. However, in dicta, several circuits had opined that same-sex harassment claims could rest on Title VII. See Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir.1995) ("[W]e do not mean to exclude the possibility that sexual harassment of ... men by other men, or women by other women would not also be actionable in appropriate cases."); Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 148 (2d Cir.1993) (Van Graafeiland, J., concurring) ("[H]arassment is harassment regardless of whether it is caused by a member of the same or opposite sex."); Bundy v. Jackson, 641 F.2d 934, 942 n. 7 (D.C.Cir.1981) (noting that harassment could be actionable where homosexual supervisor harasses employee of the same gender). Similarly, the Ninth Circuit did "not rule out the possibility that both men and women ... [could] have viable claims against [a male perpetrator] for sexual harassment." Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir.1994) (emphasis in original). Nevertheless, the district court correctly cited the Garcia court as the only federal appellate court actually to have decided the question.[2]
 
 
 14
 While the pendulum seems recently to have swung in favor of permitting same-sex harassment claims, "[w]e must of course look to the law as it existed at the time of the challenged conduct." Washington, 98 F.3d at 1192 n. 20. As the Fourth Circuit recently noted, courts addressing the issue have been "hopelessly divided." McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1195 n. 4 (4th Cir.1996); see also Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 751 (4th Cir.1996) ("District courts across the country are deeply divided on whether Title VII applies to same-gender sexual harassment.").
 
 
 15
 We note that precedent directly on point is not necessary to demonstrate a clearly established right. Ostlund v. Bobb, 825 F.2d 1371, 1374 (9th Cir.1987). If the only reasonable conclusion from binding authority were that the disputed right existed, even if no case had specifically so declared, prison officials would be on notice of the right and would not be qualifiedly immune if they acted to offend it. See id. (finding no qualified immunity where cases "clearly" set out the premises of a particular clearly established right).
 
 
 16
 However, government officials are "not charged with predicting the future course of constitutional law." Id. (internal quotations omitted). To whatever extent it may be "clear" today that a plaintiff may base a federal harassment claim on conduct perpetrated by a person of the same gender, courts were undecided on the issue at the time of Moses' alleged conduct. Moreover, that Blueford's purported right existed is not the only reasonable conclusion one must have drawn from the extant authority. Thus, we hold that Blueford's right to be free from Moses' conduct was not "clearly established." We therefore need not answer whether Moses could have had a reasonable belief that his conduct was lawful, or consider whether the district court erred by failing to hold the prison workplace to a higher standard than the general prison environment. We conclude that the district court did not err in finding Moses qualifiedly immune from liability.[3]
 
 Loss of Good Time Credit
 
 17
 Heeding this court's admonition in Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir.1995), the district court dismissed without prejudice Blueford's due process claims arising from his challenge to the prison's disciplinary proceeding, because they could fairly be construed as a challenge for loss of good time credit. Trimble warned that by treating a prisoner's defective § 1983 claim as a habeas petition, a federal court might inadvertently prevent the prisoner federal judicial consideration of remaining habeas claims the prisoner might have. Id. Here, the district court appropriately protected Blueford's interest by following this court's caution to "state that the prisoner's claims must be addressed in a habeas petition, and dismiss the 1983 claims without prejudice." Id.
 
 
 18
 Exhaustion of State Remedies Regarding Trust Account
 
 
 19
 Blueford contends that the district court erred in awarding summary judgment on his claimed due process violation concerning his prison trust account. We disagree.
 
 
 20
 Whether a state prisoner must exhaust state remedies before pursuing a federal constitutional claim is a question of law to be reviewed de novo. Cf. Cooney v. Edwards, 971 F.2d 345, 346 (9th Cir.1992) (holding that whether a federal prisoner is required to exhaust administrative remedies before pursuing a Bivens action is a question of law). Also reviewing the court's summary judgment decision de novo, Bagdadi, 84 F.3d at 1197, we find Blueford's failure to dispute the district court's conclusion that California has an adequate postdeprivation remedy for the loss of his trust account funds fatal to his § 1983 claim. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of ... the Due Process Clause ... if a meaningful postdeprivation remedy for the loss is available."); see also Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam) (applying Hudson and holding a state's adequate postdeprivation remedy for property loss bars a prisoner's § 1983 challenge to the loss). Blueford has no federal due process claim "until and unless [the state] provides or refuses to provide a suitable postdeprivation remedy." Hudson, 468 U.S. at 533, 104 S.Ct. at 3204.
 
 Magistrate Judge Findings
 
 21
 Blueford challenges pro se various discovery and briefing decisions of the magistrate judge. However, contrary rulings would have no bearing on our analysis today and we believe, as did the district court, that granting summary judgment renders these issues moot.
 
 CONCLUSION
 
 22
 We find no disputed material factual issue and determine that the only arguably sexually harassing conduct Moses perpetrated against Blueford was verbal. We hold that at the time of the incident Blueford did not have a clearly established constitutional right to be free of the conduct he alleges occurred. The district court properly applied Trimble and dismissed without prejudice Blueford's claims related to his good time credit. The court also correctly rejected Blueford's § 1983 claim regarding lost funds from the trust account since California provides an adequate postdeprivation remedy. Accordingly, we affirm the district court's judgment.
 
 
 
 *
 Honorable Donald P. Lay, Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Blueford contends that he was not allowed to call others as witnesses. The documentary evidence in the record suggests he declined to call other witnesses
 
 
 [2]
 Since the district court's decision, courts have hardly clarified the issue. For example, the Fourth Circuit partially weighed in with the Fifth in holding that same-sex harassment is not actionable under Title VII at least where the claim is based on a hostile work environment theory and both the harasser and victim are male and heterosexual. McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1195-96 (4th Cir.1996). But a different Fourth Circuit panel suggested that "sexual harassment of a male employee, whether by another male or by a female, may be actionable under Title VII if the basis for the harassment is because the employee is a man." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 752 (4th Cir.1996). Most recently, the court held that an employee can rest a hostile work environment harassment claim on Title VII where the perpetrator is a homosexual and is the same sex as the employee. Wrightson v. Pizza Hut of Am., Inc., 99 F.3d 138, 141 (4th Cir.1996)
 The Eighth Circuit has ruled in favor of a same-sex sexual harassment claim based on Title VII, Quick v. Donaldson Co., 90 F.3d 1372 (8th Cir.1996), while the Fifth Circuit continues to follow Garcia. Oncale v. Sundowner Offshore Servs., Inc., 83 F.3d 118 (5th Cir.1996) (affirming summary judgment against male plaintiff in same-sex hostile work environment claim), petition for cert. filed, 65 USLW 3432 (U.S. Dec 16, 1996) (No. 96-568). Still, neither the Supreme Court nor the Ninth Circuit has answered the question.
 
 
 [3]
 We reject Blueford's contention that Moses' conduct constitutes quid pro quo harassment. We must consider whether "the particular facts of his case support a claim of clearly established right." Backlund v. Barnhart, 778 F.2d 1386, 1389 (9th Cir.1985) (emphasis in original). Blueford was not asked for sexual favors, notwithstanding his assertion that he believed Moses' alleged repeated quips to be serious requests for oral sex. This court need not judge credibility to determine that no reasonable jury could construe the profanity, said jokingly and repeatedly and where no inmate ever participated with Moses in oral sex, as a genuine offer