145 F.3d 1078
 98 Daily Journal D.A.R. 5549
 Jennifer JENSEN, individually and as Administrator of the
Estate of James Rex Jensen, Jr., deceased and Lindsey
Elizabeth Jensen and Katelyn Melisa Jensen, minors by and
through Jennifer Jensen, guardian ad Litem, Plaintiff-Appellee,
v.
CITY OF OXNARD; Chief Harold Hurtt, individually and as
Chief of Police; Stan Meyers, individually and as Assistant
Chief of Police; Tom Cady, individually and as Assistant
Chief of Police; John Crombach, individually and as
Commander; Bill Lewis, individually and as Sergeant;
Daniel Christian, individually and as Sergeant; and Does 1
through 100, inclusive, Defendants-Appellants.
 No. 97-55936.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 5, 1998.
Decided May 28, 1998.
 
 Jeffrey Held and Alan E. Wisotsky, Law Offices of Alan E. Wisotsky, Oxnard, CA, for Defendants-Appellants.
 Edward Steinbrecher, Steinbrecher and Associates, Encino, CA, for Plaintiff-Appellee.
 Appeal from the United States District Court for the Central District of California; Stephen V. Wilson, District Judge, Presiding. D.C. No. CV-97-01096-SVW.
 Before: WALLACE, TROTT and HAWKINS, Circuit Judges.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 Officer James Jensen was shot and killed by a fellow officer during a SWAT Unit raid to serve a search warrant on an unoccupied residence. His widow, Jennifer Jensen, brought a 42 U.S.C. § 1983 action against the City of Oxnard, its police chief and several individual officers. The defendants moved to dismiss for failure to state a claim under Rule 12(b)(6). The district court denied this motion. We affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 In the early morning hours of March 13, 1996, the Special Weapons and Tactics ("SWAT") team of the Oxnard Police Department stormed a two-story townhouse to serve a search warrant on what turned out to be an unoccupied residence. As part of the operation, Officer James Jensen ("Officer Jensen") threw a "flash-bang" grenade from a staircase onto a second floor landing. The grenade exploded with a blast of light, emitting smoke into the surrounding rooms. Officer Jensen and several other SWAT team members, including Sergeant Daniel Christian ("Sergeant Christian"), went up the staircase to the second floor. Shortly thereafter, Sergeant Christian fired three rounds from his 12-gauge shotgun, killing Officer Jensen.
 
 
 3
 Although the parties dispute the facts as to exactly how Officer Jensen was killed (e.g., whether he was shot in the back; whether he was entering the room directly in front of Sergeant Christian; the degree to which vision was obscured by the grenade smoke), the parties agree that, "[i]n the turmoil of events, [Sergeant] Christian mistook [Officer Jensen] for a gun-wielding occupant of the premises and shot him to death."
 
 
 4
 Jennifer Jensen ("Jensen"), widow of Officer Jensen, filed a complaint against the City of Oxnard, the Chief of Police, and various individual officers, including Sergeant Christian (collectively "Oxnard" or the "City"). In the complaint, Jensen alleges the intentional and reckless acts of Sergeant Christian, which were a result of Oxnard's "deliberate indifference" regarding the training and control of those officers who conducted the March 13 raid, resulted in a violation of her husband's civil rights under 42 U.S.C. § 1983.
 
 
 5
 Oxnard moved to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that Jensen failed to state a cause of action upon which relief could be granted. Oxnard argued, as it does in this appeal, that this action should be dismissed because: (1) Jensen cannot sustain a § 1983 claim without alleging that specific and well-founded constitutional rights have been violated; and (2) the individual defendants are entitled to qualified immunity. The district court denied Oxnard's motion.
 
 JURISDICTION
 
 6
 We have interlocutory appellate jurisdiction to review the denial of a 12(b)(6) motion to dismiss as long as that review does not require the resolution of any controlling facts. See Behrens v. Pelletier, 516 U.S. 299, 305-07, 116 S.Ct. 834, 838-39, 133 L.Ed.2d 773 (1996). We can resolve this case simply by answering questions of law.
 
 STANDARD OF REVIEW
 
 7
 A district court's decision of qualified immunity in a 42 U.S.C. § 1983 action is reviewed de novo. See Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994).
 
 
 8
 While a district court's denial of a 12(b)(6) motion generally is not a reviewable final order, when the question of immunity is raised "we use the collateral order doctrine to exercise jurisdiction" and our review of the district court's denial is de novo. Figueroa v. United States, 7 F.3d 1405, 1408 (9th Cir.1993). We must assume the truth of all material allegations in the complaint and construe them in the light most favorable to Jensen. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986). A dismissal is warranted if it appears beyond doubt that Jensen can prove no set of facts in support of her claims that would entitle her relief. See Figueroa, 7 F.3d at 1409.
 
 ANALYSIS
 I. Friendly Fire Seizure
 A. Violation of a Constitutional Right
 
 9
 "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir.1989).
 
 
 10
 Moreover, in "seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights [one] must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Board of the County Comm'rs v. Brown, 520 U.S. 397, ----, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997).
 
 
 11
 This complaint adequately states a cause of action. Specifically, it alleges that Oxnard violated Officer Jensen's Fourth and Fourteenth Amendment rights in two respects: (1) Sergeant Christian used excessive and unreasonable deadly force; and (2) the City of Oxnard and various officials in the Oxnard Police Department acted with deliberate indifference to the maintenance, training, and control of its SWAT teams, and that indifference was a proximate cause in Sergeant Christian's violation of Officer Jensen's constitutional rights. In other words, Jensen alleges that Sergeant Christian was "highly likely to inflict the particular injury suffered by" Officer Jensen as a result of Oxnard's deliberate indifference towards the staffing and training of its SWAT teams. Brown, 117 S.Ct. at 1392.
 
 
 12
 The allegation that Sergeant Christian, by intentionally shooting at a figure he mistook to be an armed criminal, engaged in a Fourth Amendment seizure is supported in the law. See Brower v. County of Inyo, 489 U.S. 593, 596-97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (a seizure is a "governmental termination of freedom of movement through means intentionally applied" and a "seizure occurs even when an unintended person or thing is the object of the detention or taking"); Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").
 
 
 13
 Somewhat less clearly, the complaint alleges that Oxnard, through its training and control of its SWAT unit, was the "moving force" behind Sergeant Christian's actions. According to the complaint, the City of Oxnard: (1) failed adequately to train or equip the members of the SWAT team; (2) failed to control those members of the SWAT team who have a known propensity for violence; and (3) failed to investigate SWAT team members for potential substance abuse and/or mental problems. Moreover, the complaint specifically alleges that the police chief, assistant police chief, and police commander assigned Sergeant Christian to the SWAT team "knowing that he was using mind-altering drugs, including phenobarbetol and other substances." These allegations are sufficient to allege a plausible "link between the policymaker's inadequate decision and the particular injury alleged." Brown, 117 S.Ct. at 1391.
 
 B. Right to a Safe Workplace
 
 14
 Oxnard contends that these allegations do not suffice to state a potential constitutional violation. Without denying that Sergeant Christian's shooting of Officer Jensen constitutes a seizure under the Fourth Amendment, Oxnard attempts to portray this case as a "safe workplace" case. Oxnard cites a line of cases, discussed below, in which the Supreme Court and other lower courts have held that there is no constitutional right to a safe working environment. Essentially, public employees cannot bring § 1983 claims against their employers for injuries suffered on the job on the theory that the government "violated a federal constitutional obligation to provide its employees with certain minimal levels of safety and security." Collins v. City of Harker Heights, 503 U.S. 115, 127, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).
 
 
 15
 We recognize that the Constitution does not guarantee a right to a safe workplace. See id. at 126-28, 112 S.Ct. 1061. In Collins, a city sanitation department worker died while trying to clear a sewer line. His widow brought a § 1983 action against the city on the theory that her husband "had a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and had a constitutional right to be protected from the City of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees." Id. at 117, 112 S.Ct. 1061. She alleged that the city violated that right by following a custom and policy of inadequate training. Affirming the dismissal of this action, the Supreme Court held that the Constitution contains no right to a safe working environment. See id. at 126, 112 S.Ct. 1061. Accordingly, the city's alleged failure to train could not amount to a constitutional violation.
 
 
 16
 Employing Collins, Oxnard argues that Officer Jensen could not have had any of his rights violated because he was injured while performing his duties as a police officer. We reject this argument and Oxnard's attempt to turn this into a safe workplace case. Although this case is similar to the safe workplace cases in that they both concern individuals who "voluntarily accepted ... an offer of employment," id. at 128, 112 S.Ct. 1061, this case is different in one significant way--the nature of the injury alleged.
 
 
 17
 The other cases cited by Oxnard involve a variety of workplace injuries, including attacks by third parties against public employees, see Rutherford v. City of Newport News, 919 F.Supp. 885 (E.D.Va.1996), aff'd, 107 F.3d 867 (4th Cir.1997); Hartman v. Bachert, 880 F.Supp. 342 (E.D.Pa.1995), an alleged government failure to protect its employee, see Skinner v. City of Miami, 62 F.3d 344 (11th Cir.1995), and attacks by prisoners on guards. See Walker v. Rowe, 791 F.2d 507 (7th Cir.1986).
 
 
 18
 None of these cases, however, involve the use of excessive force by a government agent against a government agent. Oxnard argues that this is a "distinction without a difference." We conclude that the difference is quite significant. While the safe workplace cases concern the failure of the state adequately to train, prepare, or protect government employees from non-state actors, this case involves the allegedly intentional or reckless acts of a government employee directed against another government employee.[1]
 
 
 19
 Oxnard suggests that this case is distinguishable from a case in which an innocent civilian or even a criminal suspect is caught in the line of fire. In either of those situations, Oxnard concedes, the injured party would be able to allege a § 1983 action. The only difference here is the decedent was a police officer injured in the line of duty. Officer Jensen volunteered for the dangerous police work associated with SWAT teams. Thus, we agree with Oxnard, Jensen cannot argue that her husband is like those individuals to whom the State owes a duty to care because they have been deprived of their liberty. See, e.g., Youngberg v. Romeo, 457 U.S. 307, 315-16, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (persons in mental institutions); Turner v. Safley, 482 U.S. 78, 94-99, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (convicted felons); City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244-45, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (persons under arrest).
 
 
 20
 Nonetheless, Officer Jensen did not forfeit all constitutional rights when he became a member of the police force.[2] See Jackson v. Gates, 975 F.2d 648 (9th Cir.1992) (drug testing of police officers subject to reasonableness test of the Fourth Amendment); Graham v. Davis, 880 F.2d 1414, 1418-19 (D.C.Cir.1989) (allowing officer to bring excessive force § 1983 action against other officers based on altercation with those officers in the process of an arrest). Rather, like all individual police officers, Officer Jensen maintained some constitutional rights (including Fourth Amendment rights) which, if violated by a state actor, can result in liability under § 1983. In particular, he retained the right at issue here--the Fourth Amendment right to be free from unreasonable seizure by fellow officers while performing police work.
 
 
 21
 Accordingly, we hold that Jensen has properly stated a claim upon which relief can be granted.[3]II. Qualified Immunity
 
 
 22
 All of the individual defendants claim that they are entitled to qualified immunity. Government officials are given qualified immunity from civil liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In analyzing a qualified immunity defense, we must determine: (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful. See Gabbert v. Conn, 131 F.3d 793, 799 (9th Cir.1997); Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996).
 
 
 23
 As stated above, the complaint alleges the violation of a specific right: the Fourth Amendment right to be free from an unreasonable seizure. Thus, we must decide whether that right was clearly established when Sergeant Christian killed Officer Jensen.
 
 
 24
 A particular right is "clearly established" if "the contours of [that] right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To show that the right in question here was clearly established, Jensen need not establish that Oxnard's "behavior had been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law." Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir.1997). Indeed, "precedent directly on point is not necessary to demonstrate a clearly established right." Id. at 255. Rather, "[i]f the only reasonable conclusion from binding authority were that the disputed right existed, even if no case had specifically declared, [police] would be on notice of the right and officials would not be qualifiedly immune if they acted to offend it." Id.
 
 
 25
 We conclude that Officer Jensen had a clearly established right to be free from unreasonable seizure at the time he was killed. Although we have been unable to find a case in which a court has found the exact right at issue here, we conclude that if the allegations with respect to Sergeant Christian's conduct are true, then his unlawfulness was "apparent" in "light of preexisting law." Anderson, 483 U.S. at 640, 107 S.Ct. 3034.
 
 
 26
 In Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest ... or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." Similarly, it was well established at the time of this incident that "[t]here is no question that the apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Curnow v. Ridgecrest Police, 952 F.2d 321, 324 (9th Cir.1991).
 
 
 27
 Moreover, it has long since been established that police officers "are not relegated to a watered-down version of constitutional rights." Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Regarding the rights at issue here, it was clearly established that police officers retain their Fourth Amendment rights. See, e.g., Jackson, 975 F.2d at 652-53 (drug testing of police officers subject to reasonableness requirements of the Fourth Amendment); Graham, 880 F.2d at 1418-19 (allowing officer to bring excessive force § 1983 action against other officers based on altercation with those officers in the process of an arrest); Los Angeles Police Protective League v. Gates, 907 F.2d 879 (9th Cir.1990) (officer's Fourth Amendment rights violated by administrative search of his garage); Kirkpatrick v. City of Los Angeles, 803 F.2d 485 (9th Cir.1986) (strip searches of police officers conducted at police station violated officers' Fourth Amendment rights).[4]
 
 
 28
 Finally, concerning the use of deadly force, it was clearly established at the time of this incident that a police officer "may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others, or is fleeing and his escape will result in a serious threat of injury to persons." Harris v. Roderick, 126 F.3d 1189, 1201 (9th Cir.1997), cert. denied sub nom. Smith v. Harris, --- U.S. ----, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998). In addition, if practicable, a police officer must issue a warning before using deadly force. See Garner, 471 U.S. at 11-12, 105 S.Ct. 1694.
 
 
 29
 "It is clearly established, both by common sense and by precedent," that, on the day he was killed, Officer Jensen had a right to be free from unreasonable seizure in violation of his Fourth Amendment rights. Newell, 79 F.3d at 117. Precedent informs us that: (1) excessive force claims are to be analyzed under Fourth Amendment standards; (2) police officers retain their Fourth Amendment rights; and (3) it is a violation of the Fourth Amendment for law enforcement personnel to use deadly force unless the individual at whom that force is directed presents an immediate or serious threat of danger. Common sense tells us that, if these clearly established precedents are to mean anything, Officer Jensen had the right to be free from an unreasonable seizure even from a fellow officer in the course of police work.
 
 
 30
 Thus, the question we must answer is whether, in light of the clearly established principles governing Sergeant Christian's conduct at the time of the incident, each of the defendants "could reasonably have believed that the conduct was lawful." Harris, 126 F.3d at 1201. Examining the law concerning the use of deadly force, we hold that, based on the facts alleged in the complaint, Sergeant Christian did not act reasonably when he shot Officer Jensen to death.[5]
 
 
 31
 The reasonableness of an individual's use of force is reviewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. at 396, 109 S.Ct. 1865. Moreover, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments ... about the amount of force that is necessary in a particular situation." Id. at 396-97, 109 S.Ct. 1865. Nonetheless, this test is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397, 109 S.Ct. 1865.
 
 
 32
 Considering this case, it is clear that some factual issues need to be resolved in order to determine the reasonableness of the City's actions. If, as is alleged in the complaint, Sergeant Christian shot Officer Jensen three times in the back from a distance of three feet in conditions in which he should have been able to recognize that the figure he was shooting was a fellow officer, such a use of force would be unreasonable. Similarly, if police officials knew Sergeant Christian was likely to inflict a constitutional injury or if their practices and policies showed a "deliberate indifference" to the danger such an individual posed, they should be liable under § 1983. Because, under Jensen's version of the shooting, Sergeant Christian "could not have reasonably believed the use of deadly force was lawful," none of the individual defendants are entitled to qualified immunity at this stage of the action. Curnow, 952 F.2d at 325 (police not entitled to qualified immunity where, under plaintiff's version of the facts, decedent did not point gun at officers nor was he facing them when they initially shot at him).
 
 
 33
 Clearly, material and important issues of fact remain to be determined. Those facts might very well show that neither Sergeant Christian nor any of the other defendants acted unreasonably here. As a matter of law, however, they are not entitled to immunity simply because the injured party is a police officer.
 
 CONCLUSION
 
 34
 The complaint adequately states a claim upon which relief can be granted. It asserts that Officer Jensen's Fourth Amendment right to be free from unreasonable seizure was violated when he was shot by another officer. Although individuals assume a certain level of risk by accepting employment as police officers, they do not forfeit their constitutional rights by doing so.
 
 
 35
 Moreover, while a fully developed set of facts might show that the individual defendants acted reasonably here, they are not entitled to qualified immunity as a matter of law and the district court acted properly when it denied Oxnard's motion to dismiss.
 
 
 36
 AFFIRMED.
 
 WALLACE, Circuit Judge, concurring:
 
 37
 For the reasons stated in part II, I concur in the affirmance of the holding of the district court that the appellants are not entitled to qualified immunity as a matter of law, and, therefore, the district court properly denied the motion to dismiss the action. I would not get to the merits of the action under part I.
 
 
 38
 The Supreme Court has limited what we may decide on appeal to the question of immunity separate from the merits of the underlying action. Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions...." Id. at 528, 105 S.Ct. 2806. "[T]he legal determination that a given proposition of law was not clearly established at the time the defendant committed the alleged acts does not entail a determination of the 'merits' of the plaintiff's claim that the defendant's actions were in fact unlawful." Id. at 529 n. 10, 105 S.Ct. 2806. We have also recognized that the proper inquiry in an appeal similar to this is only whether there is qualified immunity, not whether the complaint states a claim. Figueroa v. United States, 7 F.3d 1405, 1409 (9th Cir.1993).
 
 
 
 [1]
 Although Skinner, 62 F.3d at 344, involved employee-on-employee conduct, Skinner did not argue that his Fourth Amendment rights were violated. Rather, he alleged that the city has a constitutional duty to protect employees from one another. Because there is no constitutional right to a safe workplace, the Eleventh Circuit found, this claim must fail. Jensen, on the other hand, alleges a particular constitutional violation--Fourth Amendment seizure--which exists independent of the workplace
 
 
 [2]
 Oxnard argues for precisely this outcome when it suggests that:
 [t]he voluntary acceptance of an offer of public employment precludes the existence of a constitutional right for tragic physical injury sustained by that employee in the very course of operations involved, no matter exactly how the injury may occur, whether at the hands of a criminal or another officer.
 
 
 [3]
 We also reject Oxnard's contention that traditional state workers' compensation law precludes Jensen's § 1983 claim. The cases cited by Oxnard are inapplicable to this case as none of those cases involved a deprivation of constitutional rights. See Washington v. District of Columbia, 802 F.2d 1478, 1481 (D.C.Cir.1986) (prison guard who was attacked by prisoner failed to state constitutional injury); McClary v. O'Hare, 786 F.2d 83, 87 (2d Cir.1986) (no recovery against state because deprivation of right "did not occur as a result of some state procedure"); Hayes v. Vessey, 777 F.2d 1149 (6th Cir.1985) (prison teacher injured by "a third party not a state employee or official")
 Moreover, to the extent workers' compensation precludes recovery for other causes of action, it does not preclude recovery for claims involving "substantive rather than procedural constitutional rights." Smith v. Fontana, 818 F.2d 1411, 1419-20 (9th Cir.1987); see also Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 678, 88 L.Ed.2d 662 (1986) (separate opinion of Stevens, J.) ("If the claim [concerns a] ... violation of one of the specific constitutional guarantees of the Bill of Rights[ ], a plaintiff may invoke § 1983 regardless of the availability of state remedy."). Indeed, we have previously recognized that personal injury claims that implicate constitutional rights are not preempted by state workers' compensation acts. See Maynard v. City of San Jose, 37 F.3d 1396, 1405 (9th Cir.1994).
 
 
 [4]
 Although most of these cases only discuss the police officers' Fourth Amendment right to be free from unreasonable searches, the Fourth Amendment clearly covers unreasonable seizures as well
 
 
 [5]
 Oxnard argues that this case does not fit within the "deadly force" line of cases because those cases all concerned the rights of criminal defendants or free citizens. We disagree. The only difference between those cases and this case is that the injured person happened to be a police officer. This factor affects neither the rights at stake nor the test we apply in reviewing Sergeant Christian's conduct