Chedva FEDERMAN, Individually and as Guardian as Litem; Asher Jacob Federman, a Minor; Benjamin Federman; Eliyahu Federman, a Minor; Lyle Federman, Deceased, Plaintiffs—Appellees,

v.

COUNTY OF KERN; Kern County Sheriff's Department, Defendants,

and

Carl Sparks, Kern County Sheriff; Bill Adam, Sergeant; Charlie Fivecoat, Commander; Willie Wahl, Sergeant; Donald Ferguson; Rick Woods; John McAdoo; Mike Bonsness; Gregory Justice; Gary Rhodes; Larry Studer, Joe Lopeteguy; Dave Dahl; Mike Kirkland; J.C. Plank; Mike Dunham; Eric Fennell, Defendants—Appellants.

Chedva Federman, individually and as Guardian as Litem; Asher Jacob Federman, a Minor; Benjamin Federman; Eliyahu Federman, a Minor; Lyle Federman, Deceased, Plaintiffs—Appellants,

v.

Carl Sparks, Kern County Sheriff; Bill Adam, Sergeant; Charlie Fivecoat, Commander; Willie Wahl, Sergeant; Donald Ferguson; Rick Woods; John McAdoo; Mike Bonsness; Gregory Justice; Gary Rhodes; Larry Studer, Joe Lopeteguy; Dave Dahl; Mike Kirkland; J.C. Plank; Mike Dunham; Eric Fennell, Defendants—Appellees.

Nos. 01–16691, 01–16785.
D.C. No. CV–99–05533–AWI(LJO).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 2003.

Decided April 15, 2003.

Before NOONAN, TASHIMA, and WARDLAW, Circuit Judges.

MEMORANDUM *

Defendants–Appellants Kern County Sheriff Carl Sparks and individual defendants of the Kern County Sheriff's special weapons and tactics ("SWAT") team appeal the district court's interlocutory order denying them qualified immunity for plaintiffs' 42 U.S.C. § 1983 action for excessive force by the estate and survivors of Lyle Federman. Plaintiffs cross-appeal the district court's dismissal of their § 1983 warrantless entry claim on the grounds that the individual defendants held qualified immunity for these claims and that the County of Kern and its Sheriff were immune under the Eleventh Amendment.

Attempting to detain Lyle Federman for a psychiatric evaluation, Deputies Mike Kirkland, Larry Studer, and Joe Lopeteguy shot and killed Federman in his home. Neighbors had complained of Federman's odd behavior. Sergeant Adam of the Kern County Sheriff's Department concluded, after a brief interaction with Federman at his home, that Federman should be taken into custody for an involuntary psychiatric evaluation pursuant to section 5150 of the California Welfare and Institutions Code. Without informing Federman of this decision and without seeking a warrant, Adam requested a SWAT team to assist him in detaining Federman. After approximately four hours of surrounding Federman's home, the SWAT team lured Federman to the window and sprayed him in the face with pepper gas. At the same time five officers armed with submachine guns and shotguns knocked down his door and entered his house. Federman fired two shots from a rifle out the window and the SWAT team retreated from the house. Officers then fired three rounds of tear

gas, threw a flashbang into the house, and the officers re-entered. By all accounts Federman dropped his guns in sight of the officers, drew out a knife, and began walking towards the officers—plaintiffs claim, in a final act of surrender. As Federman walked toward the officers with the knife, Officer Dahl fired four rounds of wooden "less-than-lethal" munitions at Federman. Officers Kirkland, Studer and Lopeteguy opened fire on Federman with standard ammunition in the middle of Dahl's rounds, shooting Federman a total of eighteen times and fatally wounding him.

### A. Qualified Immunity

■ Qualified immunity is a judicially-crafted protection for public officials who must exercise judgment in their official duties. "It is an 'immunity from suit rather than a mere defense to liability.' " *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citation omitted). As such, this court can exercise jurisdiction over an interlocutory appeal from a denial, but not a grant, of immunity. *See, e.g., Branson v. City of Los Angeles*, 912 F.2d 334, 335 (9th Cir.2000). We thus dismiss plaintiffs' cross-appeal against the County and the Sheriff, and against individual defendants on the warrantless entry and seizure claims for lack of appellate jurisdiction.

To determine whether qualified immunity applies, the threshold question is whether, in the light most favorable to the party asserting injury, the facts show an officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *Robinson v. Solano County*, 278 F.3d 1007, 1012 (9th Cir.2002) (en banc). If no constitutional right was violated, immunity attaches and the inquiry ends. *Saucier*, 533 U.S. at 201. If a constitutional right would have been violated were a plaintiff's allegations established, the next step is to ask wheth-

er the right was clearly established in light of the context of the case. *Id.* Finally, the contours of the right must be clear enough that a reasonable officer would understand whether his or her acts violate that right. *Id.* at 202.

The district court erred in applying the old *Hopkins* qualified immunity inquiry. *See Hopkins v. Andaya*, 958 F.2d 881 (9th Cir.1992). *Saucier* was decided after the instant motions in this case were submitted but before the district court opinion was issued, and must be applied. This court may affirm, however, on any ground supported by the record. *Matus–Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002). The application of *Hopkins* in this case was harmless error, as the facts presented pass the *Saucier* inquiry, and we affirm the denial of summary judgment on the following grounds.

### B. Excessive force

■ First, plaintiffs have alleged constitutional violations: the threshold inquiry under *Saucier*. The Sheriff department's alleged reckless entry of Federman's home with a SWAT team constitutes excessive force under the Fourth Amendment. This aggressive entry without warning or a warrant, to detain Federman for psychiatric examination due to his odd but relatively trivial, non-criminal behavior, provoked Federman to resist and turned a relatively minor situation into a fatal shooting. *See Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1368 (9th Cir. 1994), *cert. denied sub nom. Lennon v. Alexander*, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *see also Billington v. Smith*, 292 F.3d 1177, 1189–90 (9th Cir.2002). No reasonable police officer could have believed that he was entitled to make such an entry.

■ Plaintiffs also state a constitutional claim of excessive force for the fatal shoot-

ing of Federman. The reasonableness of the force used in a seizure is measured by balancing the " 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the counter-vailing governmental interests at stake.' " *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir.2001) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Governmental inter-ests are evaluated using a range of fac-tors: "(1) the severity of the crime at issue (2) whether the suspect pose[d] an immediate threat to the safety of the offi-cers or others ... (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight, and any other exi-gent circumstances [that] existed at the time of the arrest." *Id.* at 1280 (internal citations omitted).

Deadly force may not be used unless it is necessary for self-defense or to prevent escape of a suspect when an officer has probable cause to believe that the suspect poses a significant threat of death or seri-ous physical injury to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11–12, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Fed-erman was not a suspect of any kind and, resolving the factual disputes for plaintiffs, he was surrendering his knife to the police when he was shot. Under this view, de-fendants used excessive force when the deputies shot Federman eighteen times and killed him.

Next, the law on excessive force was clearly established by April 21, 1998, the day Federman was shot and killed. At that time, the cases supporting plaintiffs claims of constitutional violations—*Alexan-der*, *Graham* and *Garner*—were settled law. *See also Jensen v. City of Oxnard*, 145 F.3d 1078, 1086 (9th Cir.1998).

Finally, resolving all factual disputes for plaintiffs, a reasonable officer should have known that shooting Federman when he was surrendering violated his rights. The *Graham* balancing test weighs heavily in Federman's favor. Deadly force was used against him following a surprise siege of his home by a SWAT team. The govern-mental interests were significantly less; Federman had committed no crimes, had not threatened the SWAT team until he was sprayed in the face with pepper gas, had not attempted to flee his home, and had not threatened any bystanders. There was no immediate need to subdue him. *See Deorle*, 272 F.3d at 1283; *Alex-ander*, 29 F.3d at 1368 (Kozinski, J., con-curring). In this context, any reasonable officer should have known that a fatal shooting was excessive.

In short, plaintiffs have alleged two sep-arate excessive force violations under the Fourth Amendment. Taking their evi-dence as true for summary judgment pur-poses, the SWAT team entry into Feder-man's home and the officers' shooting of Federman were unreasonable. Qualified immunity was, thus, properly denied the individual defendants on the excessive force claims.

### C. *District court's grants of qualified immunity*

The district court dismissed claims against Kern County, the Kern County Sheriff's Department, and Sheriff Sparks on Eleventh Amendment immunity grounds, finding that Sheriff Sparks, act-ing in his law enforcement capacity, was a policymaker for the state, not the county. Plaintiffs appealed.

Since the district court's decision, we have clarified that when conducting immu-nity analyses, a court should not assume sheriffs' law enforcement actions to be state actions. Rather, a court must first conduct the analysis outlined in *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), to deter-

mine whether the sheriff had final policy-making authority for the local government for the acts in question. *See Cortez v. County of Los Angeles,* 294 F.3d 1186, 1187 (9th Cir.2002); *Bishop Paiute v. County of Inyo,* 291 F.3d 549, 562–63 (9th Cir.2002); *Brewster v. Shasta County,* 275 F.3d 803, 805 (9th Cir.2001).

This court does not have jurisdiction, however, over an interlocutory appeal from a grant of immunity. Short of the district court reconsidering its decision on the basis of new case law developments since its ruling, *see Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1178–79 (9th Cir. 1998), plaintiffs must wait for a final judgment to appeal the dismissal of the claims against the entity defendants and Sheriff Sparks. Likewise, plaintiffs must wait to appeal the district court's grant of qualified immunity on their warrantless entry and seizure claims.

The judgment denying immunity to the individual defendants on the excessive force claims is AFFIRMED. The interlocutory appeal from the judgment granting Eleventh Amendment immunity to the entity actors and Sheriff Sparks and granting qualified immunity to the individual defendants on the warrantless entry and seizure claims is dismissed at this time, without prejudice, for lack of jurisdiction.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.