**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 23 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHRISTOPHER J WATSON,<br><br>　　　　　　Plaintiff - Appellant,<br><br>　v.<br><br>CITY OF BONNEY LAKE,<br><br>　　　　　　Defendant,<br><br>　and<br><br>MARCUS KOEHN, in his individual capacity and ROBERT KOCHER, in his individual capacity,<br><br>　　　　　　Defendants - Appellees. | No. 11-35641<br><br>D.C. No. 3:10-cv-05692-BHS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted July 11, 2012
Seattle, Washington

Before: REINHARDT, KLEINFELD, and M. SMITH, Circuit Judges.

---

[*]　This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Plaintiff Christopher Watson appeals the district court's grant of summary judgment in favor of defendants, Officers Koehn and Kocher, on his claim that the officers violated his Fourth Amendment rights when they used force to enter his home without a warrant. We review de novo the district court's grant of summary judgment and we must reverse if, when viewing the evidence in the light most favorable to Watson, there remains a genuine dispute of material fact. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

The officers approached Watson outside of his home and placed him under arrest, believing at the time that he was an individual named "Jeff Ross," for whom there was an outstanding warrant for a misdemeanor offense. After receiving an initial verification of his identity, the officers unhandcuffed Watson and instructed him to retrieve his driver's license from his home to prove that he was not, in fact, Jeff Ross. Watson's evidence and the defendants' evidence differ on what happened next. Because the case was decided on summary judgment, we must review de novo taking the facts most favorable to Watson. According to Watson's version of the facts, he entered his home and grabbed his wallet, which was on a table near the door. He stood on the threshold of his home, attempting to exit with his wallet in his hands, but his egress was obstructed by the officers who stood approximately two feet from the entrance of the house. After a brief discussion

2

with the officers as they stood outside his home, Watson was physically pushed into his home by Koehn and the officers entered and searched the house.

"[T]he most basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (internal citations and quotation marks omitted). The officers' sole justification for their warrantless entry into Watson's home is the exception recognized in *Washington v. Chrisman*, 455 U.S. 1 (1982). Under *Chrisman*, an officer who arrests an individual outside of his home may accompany the arrestee if he enters his home to obtain identification, and the officer has a "right to remain literally at [the arrestee's] elbow at all times." *Id.* at 6. Because the Supreme Court recognized that "[e]very arrest must be presumed to present a risk of danger to the arresting officer," this exception was crafted to satisfy "[t]he officer's need to ensure his own safety[,] as well as the integrity of the arrest," *id.* at 7, when the arrestee is permitted to reenter his home.

Under the facts as presented by Watson, construed in the light most favorable to him, the officers did not accompany him into his home, but rather, waited until he had effectively exited before attempting to gain entry. *See, e.g.*, *United States v. Santana*, 427 U.S. 38, 42-43 (1976) (holding that the doorway of the home is a public place for purposes of the warrant requirement of the Fourth Amendment). Under *Chrisman*, the officers would have been permitted to enter the house with Watson, or even to enter after him while he remained in the home. There is, however, no exception to the Fourth Amendment that would permit the officers to enter the house of an arrestee after he has already exited, nor is there an exception that would permit the officers to force an arrestee into his home in order to justify their warrantless entry. *Cf. United States v. Whitten*, 706 F.2d 1000, 1015 (1983) ("[The] arresting officers [may not] lead the accused from place to place and use his presence in each location to justify a search incident to the arrest.") (*quoting United States v. Mason*, 523 F.2d 1122, 1126 (D.C. Cir. 1975)). Under Watson's version of the event, the officers' warrantless entry constituted an illegal search under the Fourth Amendment.

When determining whether the use of force by the police is unreasonable, we balance the factors justifying the use of force against the degree of governmental intrusion. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Here,

4

under Watson's version of the facts, the officers entered Watson's home without a warrant and in the absence of any valid exception to the warrant requirement. They did so by using force against an individual that the officers have not contended posed any threat to their safety, who was suspected of, at most, a misdemeanor, and who did not resist arrest or attempt to flee. The amount of force used was sufficient to knock Watson off balance and backwards and down into his kitchen stove. We cannot say that, as a matter of law, the force used by the officers was reasonable under these circumstances.

The clearly established prong of the qualified immunity analysis is intended to recognize that "government officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To show that the right in question here was 'clearly established,' [Watson] need not establish that [the officers'] behavior had been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (1998) (*quoting Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir.1997)) (internal quotation marks omitted). With regard to the warrantless entry, "the burden is on the government to demonstrate exigent circumstances that overcome

the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). Under the facts as presented by Watson, it would have been clear to reasonable officers that the *Chrisman* exception did not apply because Watson was no longer in his home and the underlying law enforcement needs that justified the *Chrisman* exception had dissipated. Similarly, given the lack of governmental interest justifying the use of force, it would have been clear to reasonable officers that even the limited amount of force they employed was unreasonable. *See Guite v. Wright,* 147 F.3d 747, 750 (8th Cir. 1998) (officers used excessive force when they pushed an individual up against an open door when he refused to consent to their entry); *see also Liberal v. Estrada*, 632 F.3d 1064, 1078-79 (9th Cir. 2011) (officers used excessive force when they pushed an individual against a police car).

There exists a genuine dispute of material facts that, if resolved in Watson's favor, would allow him to prevail on both his warrantless entry and excessive force claims. The officers are not entitled to qualified immunity on either claim if Watson's factual account is accepted, thus summary judgment was improperly granted. We therefore reverse and remand for further proceedings.

REVERSED and REMANDED.