FILED

NOT FOR PUBLICATION

MAY 06 2019

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERNEST O. ABBIT, on behalf of himself
and on behalf of all persons similarly
situated,

          Plaintiff-Appellant,

  v.

ING USA ANNUITY AND LIFE
INSURANCE COMPANY; ING U.S.,
INC.,

          Defendants-Appellees.

No. 17-55836

D.C. No. 3:13-cv-02310-GPC-WVG

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted April 12, 2019
Pasadena, California

Before: PAEZ and CLIFTON, Circuit Judges, and ENGLAND,[**] District Judge.

       Plaintiff-Appellant Ernest Abbit appeals the district court's orders granting

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     [**]     The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

Defendants-Appellees ING USA Annuity and Life Insurance Company and ING U.S., Inc.'s motions for summary judgment. Reviewing de novo, we affirm. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 447 (9th Cir. 2018).

**1.** As the district court recognized, even if the evidence is viewed in the light most favorable to Abbit, *see Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015), Abbit has not identified a contractual provision that ING breached. The contract governing his Fixed Index Annuity ("FIA") did not guarantee that the FIA would have a "true value" or "fair value" during the life of the annuity. The terms concerning the annuity's guaranteed value only promised that Abbit would eventually receive a certain minimum amount,[1] either in a surrender payment or in a series of annuity payments. Abbit has not shown that ING failed to pay him or any other class member that minimum amount.

Nor did the FIA contract state that Abbit would earn interest that was "based on" the performance of the S&P 500. Instead, the contract informed Abbit that he could earn interest by participating in different "strategies." It also promised that each strategy would credit Abbit with interest at a rate determined by the formula

---

[1] As required by Section 5.8 of the FIA contract, that minimum amount is equivalent to the minimum amount required by California law. *See* Cal. Ins. Code §§ 10168.25(b)–(c), 10168.3, 10168.4.

outlined in the contract. As the district court recognized, Abbit has not shown that ING failed to abide by the calculations outlined in those formulas.

In sum, Abbit has failed to identify any provision of the FIA contract that ING breached. We therefore conclude that ING is entitled to summary judgment on Abbit's breach of contract claims. Because ING honored its contractual obligations, we also affirm the district court's entry of summary judgment on Abbit's elder abuse claims. *See Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2011) (dismissing elder abuse claims because "[a] commercial lender . . . may properly assert its contractual rights").

**2.** Abbit also argues that ING breached California's duty of good faith and fair dealing by setting the "Participation Rates" and "Caps" that limited the interest that he could earn at an unfairly low level. However, under California law, the duty of good faith and fair dealing cannot "prohibit a party from doing that which is expressly permitted by an agreement." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728–30 (Cal. 1992). The FIA contract expressly permitted ING to set the Participation Rates and Caps at any level within a certain range. The lower bound of that range was zero. There is no dispute that ING always set the rates and caps above zero. Because the rates set by ING were

expressly permitted by the FIA contract, ING did not violate the duty of good faith and fair dealing. *See Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110–12 (Cal. 2000).

**3.**     ING is also entitled to summary judgment on Abbit's claims based on California's securities laws. Under California law, annuities do not qualify as securities. Cal. Corp. Code § 25019. Because the FIAs attempted to (and did) comply with California's laws regulating annuities, *see* Cal. Ins. Code § 10168.25(b)–(c), they were annuities. California's securities laws do not apply. Cal. Corp. Code § 25019.

**4.**     We also affirm the district court's orders granting ING summary judgment on Abbit's claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq*. Abbit attempted to show that ING violated the UCL by "borrowing" violations of other California laws, *see Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000), most notably Insurance Code Section 10168.25(e). Section 10168.25(e) required ING to set the Participation Rates and Caps at a level that ensured that each "strategy" included in the FIA contract offered consumers a minimum market value.

The parties propose competing measures of the strategies' market value. Section 10168.25(e) empowers the California Insurance Commissioner with determining the market value of these strategies. ING hedged by purchasing call

4

options that were intended to perfectly reflect the interest that consumers could earn from each strategy. Because the market value of those options should have been equal to the value of the strategies themselves, ING assured the California Insurance Commissioner that it would comply with Section 10168.25(e) by ensuring that the amount it spent on call options would equal the minimum market value required by the statute. At the summary judgment stage, ING submitted evidence showing that it did just that. In response, Abbit relied on an expert who offered a theoretical measure of market value based on academic studies.

We conclude that Abbit's expert did not create a genuine issue of material fact on this issue.[2] Section 10168.25(e) clearly contemplates that the California Insurance Commissioner will determine how to measure market value. Here, the Insurance Commissioner accepted ING's approach that used the value of the call options to calculate the strategies' market value. Abbit cannot create a genuine issue of material fact by relying on an expert report that used an entirely different measure of value.

---

[2] We also note that Abbit submitted this expert report well after the district court granted ING's motion for summary judgment on his class claims. As a result, it cannot preclude the entry of summary judgment on the class claims. *See Hopkins v. Andaya*, 958 F.2d 881, 887 n.5 (9th Cir. 1992), *overruled on other grounds as stated in Federman v. Cty. of Kern*, 61 F. App'x 438, 440 (9th Cir. 2003).

Thus, Section 10168.25(e) cannot support Abbit's UCL claims. As the district court recognized, Abbit failed to establish a violation of any other statute. We therefore affirm the district court's entry of summary judgment on Abbit's UCL claims.

**AFFIRMED.**