Filed 12/31/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TREYANA PIERCE,<br>        Plaintiff and Appellant,<br>v.<br>SAN MATEO COUNTY SHERIFF'S<br>DEPARTMENT et al.,<br>        Defendants and Respondents. | A138278<br><br>(San Mateo County<br>Super. Ct. No. CIV508006) |

## I. INTRODUCTION

After members of the San Mateo County Sheriff's Gang Task Force allegedly conducted a warrantless search of her home, plaintiff and appellant Treyana Pierce filed this civil rights action under title 42 United States Code section 1983 (section 1983) against the San Mateo County Sheriff's Department and individual members of the Gang Task Force, sued as Does 1–12. San Mateo County (appearing for the Sheriff's Department) successfully demurred to Pierce's third amended complaint and procured a complete dismissal of the case.[1] We agree the case was properly dismissed as to the County, although for reasons different than relied on by the trial court. We reverse, however, as to the individual Doe defendants, none of whom appeared, and who, apparently, have never been served.

We publish this opinion in hopes of eliminating some of the confusion that has arisen in the California courts as to the interplay between the statutory language of section 1983 (which imposes liability only on "persons") and the scope and import of the Eleventh Amendment to the United States Constitution. On appeal, the County has

---

[1] The Sheriff's Department is not a separate governmental entity, but is a department of San Mateo County (County).

1

argued the Sheriff's Department is not liable under section 1983 because "the Sheriff enjoys state immunity under the 11th Amendment of the U.S. Constitution from prosecution of section 1983 violations," citing *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 [11 Cal.Rptr.3d 692, 87 P.3d 1] (*Venegas*). Such "immunity" language, indeed, appears in *Venegas* and other Court of Appeal opinions, including opinions pre-dating *Venegas*. However, as we discuss, binding United States Supreme Court precedent, on both the scope of liability under section 1983 and the import of the Eleventh Amendment makes clear (a) the meaning of the term "person" as used in section 1983 and the reach of the Eleventh Amendment are separate issues, (b) the Eleventh Amendment applies only in federal court and not in state court, and (c) depending on state law, a county sheriff may not be subject to a suit for damages under section 1983 because he or she is not a "person" as that term is used in the statute, and not because he or she is "immune" from suit by virtue of the Eleventh Amendment or sovereign immunity. We therefore affirm the dismissal as to the County on the ground the Sheriff's Department is not a "person" subject to a suit for damages under section 1983.

## II. BACKGROUND

In her third amended complaint, Pierce alleged that on August 26, 2009, officers of the Sheriff's Department, and specifically, members of the Gang Task Force, conducted a warrantless search of her home on the basis of a "supposed condition of probation for an individual named Darian Whetstone."[2] She further alleged that, on that date, Whetstone was neither a resident of her home nor on probation.

In August 2011, Pierce filed the instant civil rights action against the San Mateo County Sheriff's Department. The operative third amended complaint alleged two causes

---

[2] The County maintains no Sheriff Department officers participated in the search, but acknowledges that for purposes of demurrer, it generally must accept the factual allegations of the complaint as true. (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751 [154 Cal.Rptr.3d 394] [in reviewing dismissal following a demurrer, court must "assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law"].)

2

of action under section 1983. The first was asserted against Does 1–12, allegedly individual members of the Gang Task Force who were involved in the challenged search. The second cause of action was asserted against the Sheriff's Department and alleged Pierce's constitutional rights were violated as a result of Department "policies, customs, or practices." Thus, as we will explain, the second cause of action was an attempt by Pierce to state a section 1983 claim against the Sheriff's Department under *Monell v. Dept. of Soc. Servs.* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018] (*Monell*).

The County (on behalf of the Sheriff's Department) demurred to the third amended complaint on the ground Pierce failed to state a claim. The County maintained the amended complaint "reaffirmed" a "concession" a probationer with a search condition was living with Pierce at the time of the search and further maintained Pierce had "conceded" in prior pleadings that Whetstone resided in her home. The County additionally moved to strike the punitive damages allegations on the ground it is not subject to punitive damages under Government Code section 818.

The trial court sustained the County's demurrer without leave to amend, ruling, among other things, that the complained-of search was a permissible probation search, and the amended complaint contained "insufficient factual allegations sufficient [*sic*] to establish that Whetstone was *not* a resident at 1016 Tilton Avenue" (italics added) and "thus fail[ed] to establish that the search was unlawful." The court also granted the motion to strike the punitive damages claim and subsequently entered judgment dismissing the entire case.

### III. DISCUSSION

**A.    *Pierce Adequately Alleged an Unlawful Search***

We first consider whether the factual allegations of the amended complaint sufficiently stated a claim for an unlawful search, putting aside for the moment whether a section 1983 claim will lie against the Sheriff's Department and the individual Doe defendants. The rules governing our review of Pierce's amended complaint are well established. In reviewing a judgment of dismissal entered upon the sustaining of a demurrer, we accept as true all the material facts properly pleaded and generally do not

3

go beyond the four corners of the complaint, though we may consider matters subject to judicial notice. (*Worsham v. O'Connor Hospital* (2014) 226 Cal.App.4th 331, 335 [171 Cal.Rptr.3d 667].) We construe the complaint's alleged facts liberally and give the complaint a reasonable interpretation, reading the complaint as a whole and reading its parts in their context. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394]; *Delon Hampton & Associates, Chartered v. Superior Court* (2014) 227 Cal.App.4th 250, 254 [173 Cal.Rptr.3d 407].)

The County acknowledges the pleadings of a pro per civil rights litigant, such as Pierce, are to be read with particular liberality. We are to " ' "apply federal law to determine whether [the] complaint [has pleaded] a cause of action . . . sufficient to survive a general demurrer." [Citations.] According to federal law, "we are required to construe complaints under [section 1983] liberally." [Citation.] "To uphold a dismissal [for failure to state a claim for relief, the federal counterpart of our general demurrer], it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." [Citation.]' " (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1471 [150 Cal.Rptr.3d 735] (*Arce*), quoting *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1088 [271 Cal.Rptr. 44].) "Therefore, dismissal is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief.' (*Osborne v. District Attorney's Office for Third Judicial Dist.* (9th Cir.2005) 423 F.3d 1050, 1052; see *Jensen v. City of Oxnard* (9th Cir.1998) 145 F.3d 1078, 1082 (*Jensen*).)" (*Arce, supra,* at p. 1471.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.) "A residence search conducted without a warrant is presumed unreasonable unless it comes within an exception to the warrant requirement. [Citation.] One such exception is the consent to search. [Citations.] In California, probationers consent in advance, as a condition of their probation, to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term." (*People v. Medina*

(2007) 158 Cal.App.4th 1571, 1575–1576 [70 Cal.Rptr.3d 413].) Thus, "[u]nder this state's body of law, a suspicionless search pursuant to a probation search condition is not prohibited by the Fourth Amendment." (*Id.* at p. 1580.)

Accordingly, if Whetstone was on probation and subject to a valid search condition at the time of the challenged search, and if he resided in Pierce's house at that time, the complained-of search was not unlawful and did not violate Pierce's Fourth Amendment rights.

The amended complaint alleged Whetstone "was not on probation" on the day of the search. It also alleged, however, Whetstone was "remanded to the custody of the San Mateo County Sheriff to serve a 90 day jail sentence effective June 27, 2009 and his probation would terminate upon his release from custody." The County maintains the latter allegation was a tacit admission Whetstone *was* on probation the day of the search—August 26, 2009—59 days after Whetstone was remanded. That is too stringent a reading of the amended complaint for purposes of a demurrer. What the complaint specifically alleged was that Whetstone's probation would terminate "upon his release from custody," not on the 90th day following the date he began serving that term.

In fact, at the hearing on the demurrer, Pierce asked the trial court to consider "paperwork" purportedly showing Whetstone was released the day *before* the search. This prompted the court to put the case over for a week to "see the paperwork" and also to consider "information" it had earlier in the hearing asked the County to "bring in" to show why the probation department had believed Whetstone was residing at Pierce's home.

At the next hearing, the County provided the court with an "inmate record" that counsel represented was a "printout" of a "confidential" document generated by the Sheriff's Department and indicated Whetstone was residing at Pierce's address. Counsel further represented the address had been obtained from Department of Motor Vehicle (DMV) records. Pierce claimed she had no knowledge Whetstone had provided her address to the DMV and continued to deny it had been his residence.

5

As for Whetstone's custody status, the inmate record stated: "schedule release date 10/24/09." As the trial court pointed out, this date was beyond the release date for a 90-day commitment commencing June 27th. Counsel for the County had no explanation for the discrepancy. Pierce, in turn, continued to assert Whetstone was, in fact, released in August, the day before the search, which she claimed was shown by a Probation Department letter.

The court then pressed the County for more booking detail, including whether Whetstone was serving multiple sentences and whether they were running concurrently or consecutively. At this point, counsel for the County observed the court was "going way outside the four corners of the complaint."

The trial court nevertheless proceeded, sua sponte, to pull up records on its own computer. At this point, the court's bailiff spoke up, stating the records showed Whetstone was booked three times during 2009. They also appeared to show, at least as to one matter, that Whetstone was released on August 25, 2009, the date Pierce claimed. After the court accessed additional records, the court clerk joined in the discussion, stating that after his release, Whetstone had remained on probation in another case. The court then apparently addressed Pierce, stating "it would appear" Whetstone was still on probation on the day of the search. In response, Pierce asked if she was "allowed" to see the files to examine the terms and conditions of the probation. The court replied it did not have "that file."

Towards the end of the hearing, Pierce again asked, without success, for an opportunity to review the files. The court clerk, who had apparently been continuing to look at the computer files, then announced the case that had remained pending against Whetstone was for driving under the influence. She further announced that a search condition is *not* normally part of the terms and conditions of probation in such a case. This commentary drew no response from the court.

Ultimately, counsel for the County acknowledged "clearly, nothing [was] clear" as to Whetstone's probation status and residence on the day of the search.

At the end of the continued hearing, the trial court took the matter under submission, and on January 17, 2013, issued a written order sustaining the demurrer without leave to amend and granting the motion to strike. The court first ruled, apparently on the basis of the criminal records examined during the continued hearing, that the "search, as alleged, was a legitimate probation search" and thus "no civil rights violation occurred here." The court secondly made a "finding," apparently on the basis of these records, that during 2009 Whetstone gave two different addresses as his residence, one of which was Pierce's house. This, reasoned the court, meant the complaint contained "insufficient factual allegations" to "establish that Whetstone was *not* a resident" (italics added) of Pierce's house.

This detailed recitation of what occurred at the demurrer hearings confirms that the County was right on the money in raising concerns about the trial court's lengthy excursion beyond the four corners of the amended complaint in ruling on the demurrer. What the court effectively did was transform the demurrer hearings into a summary judgment proceeding. Moreover, it did so without notice to Pierce and without giving her an opportunity to review and respond to either the Sheriff's Department record the County provided at the court's request, or the court records the court pulled up on its own. None of this material was properly put before the court, let alone proffered with an adequate foundational showing. Furthermore, the best that can be said about this material is that it raised questions about Whetstone's probation and residence status on the date of the search.

The County nevertheless continues to maintain on appeal, as it did in the trial court, that "as a . . . matter of law" Whetstone's legal residence was not the county jail, but Pierce's home. The County points to Pierce's allegation that on the day of the search "Whetstone's residence was the county jail." But as we have discussed, Pierce also generally alleged that on the day of the search, Whetstone "was not residing at" her address and "was not on probation." Given the great liberality with which the allegations of her pro per civil rights complaint must be read, Pierce's allegations are, in their totality, minimally sufficient to state a Fourth Amendment claim.

7

**B.**     *As to The Matters Alleged, the Sheriff's Department Is Not a "Person" Subject to a Damages Suit Under Section 1983*

We now turn to the new argument the County has advanced on appeal—that the Sheriff's Department is not liable under section 1983 "because the Sheriff enjoys state immunity under the 11th Amendment of the U.S. Constitution from prosecution of section 1983 violations."  Since the County's argument presents a pure question of law, it is one that can be advanced and considered for the first time on appeal.  (See *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1396 [89 Cal.Rptr.3d 659]; *B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959 [230 Cal.Rtpr. 192].)  As we discuss, the County is correct that, in this case, the Sheriff's Department is not subject to a damages suit under section 1983.  But that is *not* because the Sheriff is "immune" from suit under the Eleventh Amendment or sovereign immunity.  Rather, it is because the Sheriff, as a matter of statutory construction, is not a "person" as that term is used in section 1983.

**1.**     ***"Person" Subject to Suit Under Section 1983***

Section 1983 states, in pertinent part:  "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  (42 U.S.C. § 1983, italics added.)

Because section 1983 is a federal statute, the meaning of the word "person" as used therein is ultimately a question of federal law, and specifically, one of federal statutory interpretation.  (See *Garcia v. Superior Court* (1996) 42 Cal.App.4th 177, 181 [49 Cal.Rptr.2d 580] (*Garcia*) [interpretation of section 1983 is a matter of federal substantive law]; *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 188 [45 Cal.Rtpr.2d 82] [courts "look to federal law to interpret the language of section 1983"].)

The meaning of the term has been fleshed out in a series of United States Supreme Court decisions, three of which are particularly significant here and controlling authority in this area of the law. (See *People v. Fletcher* (1996) 13 Cal.4th 451, 469, fn. 6 [53 Cal.Rtpr.2d 572, 917 P.2d 187] (*Fletcher*) [decisions of United States Supreme Court on questions of federal law "are binding on all state courts under the supremacy clause of the United States Constitution"]; *Garcia, supra*, 42 Cal.App.4th at p. 181.)

The first is *Monell, supra,* 436 U.S. at page 658, in which the Supreme Court held *local* governmental entities and *local* officials can be liable under the statute when an official policy or custom leads to the violation of a federally secured civil right. (*Id.* at pp. 690–691.) The High Court reached this conclusion after an exhaustive examination of the legislative history of section 1983 (enacted as section 1 of the 1871 Civil Rights Act) and the statutory language. (*Monell,* at pp. 665–695.) "Our analysis of the legislative history of the Civil Rights Act . . . compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." (*Id.* at p. 690.) However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." (*Id.* at p. 694.) *Monell* thus foreclosed respondeat superior liability and gave rise to what are commonly referred to as "policy or custom" section 1983 cases against local governmental entities and local officials acting in their official capacity.

The second significant decision is *Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58 [105 L.Ed.2d 45, 109 S.Ct. 2304] (*Will*), in which the Supreme Court held a *state* is not a "person" as that term is used in section 1983 and thus is not subject to a policy or custom section 1983 action under *Monell*. (*Will*, at p. 71.) The court began its analysis by observing the case had been brought in Michigan state court. This, explained the court, placed the "question whether a State is a person under § 1983 squarely before us *since the Eleventh Amendment does not apply in state courts.*" (*Id.* at pp. 63–64,

9

italics added.)  As the Court observed, confusion as to whether a state is a "person" under section 1983 had arisen, in part, because *federal courts* had dismissed section 1983 cases against states on Eleventh Amendment grounds.  (*Will*, at p. 63.)

The Supreme Court then turned to the language of the statute, pointing out that "in common usage" the term "person" does not include the sovereign (such as a state).  Accordingly, statutes using the term "person" are not "ordinarily construed" as including the sovereign.  (*Will, supra*, 491 U.S. at p. 64.)  The court next observed the language of section 1983 does not clearly evince any intent by Congress to "alter" the historic constitutional balance between the states and the federal government by subjecting the states to federally-based liability.  (*Will*, at p. 65.)

The court further explained state liability under section 1983 would be inconsistent with Congress' intent that civil rights cases be brought in the federal courts.  Indeed, Congress provided for federal court jurisdiction "precisely" to enable civil rights plaintiffs "to avoid" the state courts, many of which were, at the time, balking at enforcing federally-secured civil rights.  (*Will, supra*, 491 U.S. at p. 66.)  However, states are entitled to invoke their sovereign immunity from suit, including in the federal courts as recognized by the Eleventh Amendment.  Congress, therefore, could not have viewed the term "person" under section 1983 as including the states, since, absent their consent to suit, they cannot be sued in the very courts Congress intended would be the principal forum for civil rights suits under the statute.  (*Will*, at pp. 66–67.)  Notably, in discussing this point, the court explicitly observed the meaning of the term "person" under section 1983 and the scope of the Eleventh Amendment are "separate issues."  (*Will*, at p. 66.)  The court similarly observed there is no evidence Congress intended to "override well-established immunities or defenses under the common law," one of which is sovereign immunity.[3]  (*Will*, at p. 67.)

---

[3]  As discussed, *infra* at pages 15–18, sovereign immunity is neither established by, nor coextensive with, the Eleventh Amendment.  Rather, sovereign immunity is a historic doctrine of the common law, secured against intrusion by the federal courts by the Eleventh Amendment.

10

The Supreme Court then examined the legislative history of section 1983, concluding it also does not suggest Congress intended to subject the "States themselves to a damages suit under federal law." (*Will, supra*, 491 U.S. at p. 68.) Finally, the court explained its decision in *Monell* is not at odds with the conclusion the term "person" as used in section 1983 does not include states. "[I]t does not follow that if municipalities are persons then so are States." (*Will*, at p. 70.)

Thus, in *Will*, the Supreme Court did not hold states are "immune" from section 1983 liability under the Eleventh Amendment or sovereign immunity. Rather, the High Court held, as a matter of statutory construction, that a state is not a "person" as that term is used in section 1983—and it is for *this* reason that a civil rights claim for damages under section 1983 will not lie against a state. (See also *Arizonans for Official English v. Arizona* (1997) 520 U.S. 43, 69 [137 L.Ed.2d 170, 117 S.Ct. 1055] (*Arizonans*) ["The barrier [to a § 1983 claim] was not, as the Ninth Circuit supposed, Eleventh Amendment immunity, which the State could waive. The stopper was that § 1983 creates no remedy against a State."]; *Hafer v. Melo* (1991) 502 U.S. 21, 30 [116 L.Ed.2d 301, 112 S.Ct. 358] (*Hafer)* [court "considered the Eleventh Amendment in *Will* only because the fact that Congress did not intend to override state immunity when it enacted § 1983 was relevant to statutory construction"]; *Ngiraingas v. Sanchez* (1990) 495 U.S. 182, 192, fn. 12 (*Ngiraingas*) [having held the territory was not a "person" under section 1983, it was "unnecessary to consider Guam's claim of immunity under the Eleventh Amendment"].)

The Supreme Court also made clear its "person" holding applies not only to a state, vel non, but also to an arm of the state, such as the Michigan Department of State Police sued in *Will*. It additionally applies to a state official sued in his or her official capacity, such as the Director of State Police sued in *Will,* because such a suit is "not a suit against the official but rather is a suit against the official's office." (*Will, supra*, 491 U.S. at p. 71; see also *Arizonans, supra,* 520 U.S. at p. 69, fn. 24 ["State officers in their official capacity, like States themselves, are not amenable to suit for damages under § 1983."]; *Hafer, supra,* 503 U.S. at p. 27 ["State officers sued for damages in their

11

official capacities are not 'persons' for purposes of suit because they assume the identity of the government that employs them."].)[4]

The third decision significant to the instant case is *McMillian v. Monroe County* (1997) 520 U.S. 781 (*McMillian*), in which the Supreme Court held the Monroe County Sheriff "represent[s] the State of Alabama" in performing law enforcement functions. (*Id.* at p. 793.) Accordingly, the Sheriff was not acting as a county policymaker during the murder investigation at issue and, thus, was not subject to a policy or custom section 1983 action under *Monell.* (*McMillian*, at p. 783.)

The Supreme Court began its analysis in *McMillian* by summarizing its holding in *Monell*—"that a local government is liable under § 1983 for *its* policies that cause constitutional torts." (*McMillian, supra*, 520 U.S. at p. 784, italics added.) Thus, the issue before the high court was "whether Alabama sheriffs are policymakers for the State or for the county when they act in a law enforcement capacity." (*Id.* at p. 785.) This, said the court was a " 'federal question' " (*id.* at p. 786, quoting *Regents of Univ. of Cal. v. Doe* (1997) 519 U.S. 425, 429, fn. 5 [137 L.Ed.2d 55, 117 S.Ct. 900]), although one "dependent on an analysis of state law." (*McMillian*, at p. 786; see also *Howlett v. Rose* (1990) 496 U.S. 356, 366 [110 L.E.2d 332, 110 S.Ct. 2430] (*Howlett*) ["[t]he adequacy of the state law ground to support a judgment precluding litigation of the [section 1983] claim is itself a federal question" subject to de novo review].)

---

[4] The Supreme Court distinguished section 1983 cases seeking only injunctive relief. (*Will, supra*, 491 U.S. at p. 71, fn. 10.) Such cases, whether brought against a state, an arm of a state, or against a state official in his or her official capacity, "are not treated as actions against the State" (*ibid.*) and thus may be pursued in federal court (and despite the Eleventh Amendment) under what is commonly referred to as the *Ex parte Young* doctrine. (See, e.g., *Virginia Office for Protection and Advocacy v. Stewart* (2011) __ U.S. __ [131 S.Ct. 1632, 1638] (*Stewart*); *Ex parte Young* (1908) 209 U.S. 123 [52 L.Ed. 714, 28 S.Ct. 441].)

*Will* also does not apply to individual state defendants sued in their *personal* capacities. (See *Arizonans, supra,* 520 U.S. at p. 69, fn. 24 ["State officers are subject to § 1983 liability for damages in their personal capacities . . . even when the conduct in question relates to their official duties."]; *Hafer, supra,* 502 U.S. at pp. 25–27.)

12

Stating it was deferring "considerably" to the "expertise" of the Eleventh Circuit Court of Appeals in interpreting Alabama law (*McMillian, supra*, 520 U.S. at pp. 786–787), the Supreme Court turned to the Alabama Constitution, examining its provisions pertaining to law enforcement and county sheriffs. (*Id.* at pp. 787–788.) The court also viewed the Alabama Supreme Court's interpretation of these provisions as "[c]ritically" important. (*Id.* at p. 789 [the state court "has held unequivocally that sheriffs are state officers" and that "tort claims" against sheriffs based on their official acts "therefore constitute suits against the State"] [5].)

The Supreme Court next examined the Alabama Code, concluding its provisions also demonstrate county sheriffs are acting as the State in performing law enforcement duties. (*McMillan, supra*, 520 U.S. at pp. 789–791.) The court therefore concluded "the weight of the evidence is strongly on the side of the conclusion reached by the Court of Appeals: Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." (*Id.* at p. 793.)

The Supreme Court acknowledged a state-specific inquiry as to the proper characterization of county sheriffs can result in law enforcement officials being "characterized differently in different States." (*McMillan, supra*, 520 U.S. at p. 795.) But that is no reason, said the court, to adopt a "uniform, national characterization for all sheriffs." (*Ibid.*) "[S]uch a blunderbuss approach would ignore a crucial axiom of our government: the States have wide authority to set up their state and local governments as they wish." (*Ibid.*) "Thus, since it is entirely natural that both the role of sheriffs and the importance of counties vary from State to State, there is no inconsistency created by court

---

[5] In a footnote, the Supreme Court further observed that as a result of (a) the Alabama Supreme Court's holding that county sheriffs are arms of the state and (b) the Alabama Constitution's sovereign immunity provisions barring suit against the state, the Alabama Supreme Court had held a county sheriff is "absolutely immune from all suits for damages based on his official acts." (*McMillan, supra*, 520 U.S. at p. 789, fn. 5.) This footnote thus concerns the State of Alabama's common law sovereign immunity as expressed in its state constitution, and has nothing to do with "Eleventh Amendment sovereign immunity."

13

decisions that declare sheriffs to be county officers in one State, and not in another."
(*Ibid.*)

Once the Supreme Court concluded in *McMillian* that Alabama county sheriffs represent the state in executing their law enforcement duties, it followed, of course, under *Will*, that the Monroe County Sheriff was not a "person" as that term is used in section 1983 when executing law enforcement duties and therefore was not subject to a suit for damages under that statute based on the execution of such duties. The Supreme Court made no mention of "Eleventh Amendment immunity" in *McMillian*. Nor would there have been any logic in doing so, given the court's analysis and holding in *Will*. (See *Arizonans, supra,* 520 U.S. at p. 69; *Howlett, supra,* 496 U.S. at p. 376 ["[s]ince this Court has construed the word 'person' in § 1983 to exclude States, neither a federal court [n]or a state court may entertain a § 1983 claim against such a defendant."]; *Ngiraingas, supra,* 495 U.S. at p. 12.)

The year after the United States Supreme Court decided *McMillian* our Supreme Court decided *Pitts v. County of Kern* (1998) 17 Cal.4th 340 [70 Cal.Rptr.2d 823, 949 P.2d 920] (*Pitts*), holding a California district attorney acts on behalf of the state when preparing to prosecute and prosecuting violations of state laws. (*Id.* at p. 362.) The court followed the analytical template the United States Supreme Court employed in *McMillian*. (*Pitts*, at pp. 352–362.) Thus, the court first examined California's constitutional provisions concerning which entity, the state or the county, supervises the work of the district attorney, and next reviewed state laws pertaining to the subject. (*Id.* at pp. 356–359.) It then observed "over 100 years ago," the court had held a district attorney performs " 'two distinct functions,' " as a law officer of the county and as " 'the public prosecutor,' " and in the latter capacity he acts " 'in the name of the people of the state.' " (*Id.* at p. 359.) Acknowledging there are some legal provisions suggesting a district attorney is a county officer, the court concluded, on balance, California law treats a district attorney as representing the state, and not as a policymaker of the county, in preparing to prosecute and when prosecuting criminal violations of state laws. (*Id.* at

14

p. 362.)  The court reached the same conclusion as to a district attorney's training and supervision of staff in these areas.  (*Id.* at pp. 362–366.)

Given the California Supreme Court's holding in *Pitts*—that district attorneys represent the state in preparing to prosecute and when prosecuting criminal violations of state laws—it necessarily followed, under the United States Supreme Court's decision in *Will*, that the Kern County District Attorney sued in *Pitts* was not a "person" as that term is used in section 1983 when executing his state law prosecutorial duties and thus was not subject to a suit for damages under that statute based on the execution of such duties. And just as the United States Supreme Court made no mention of  "Eleventh Amendment immunity" in *McMillian*, our Supreme Court likewise made no mention of such in *Pitts*. Rather, the outcome in both cases was dictated by the holding in *Will* that states are not "persons" as that term is used in section 1983.  (See *Arizonans, supra,* 520 U.S. at p. 69; *Howlett, supra,* 496 U.S. at p. 376; *Ngiraingas, supra,* 495 U.S. at p. 192, fn. 12.)

### 2.  *The Eleventh Amendment Does Not Apply in State Court*

The scope and import of the Eleventh Amendment to the United States Constitution has also been discussed many times by the United States Supreme Court. These decisions by the high court are, again, binding authority in this area of the law. (See *Fletcher, supra,* 13 Cal.4th at p. 469, fn. 6; *Garcia, supra*, 42 Cal.App.4th at p. 181.) One case of particular note here is *Alden v. Maine* (1999) 527 U.S. 706 [144 L.Ed.2d 636, 119 S.Ct. 2240] (*Alden*), in which the court held Maine's common law sovereign immunity precluded a state court action by state employees under the federal Fair Labor Standards Act.[6]  (*Alden*, at pp. 759–760.)

With respect to the Eleventh Amendment, the Supreme Court in *Alden* made two salient observations.  It first explained that because the "Eleventh Amendment makes explicit reference to the States' immunity from suits 'commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State,'" the court had, "as a result, sometimes referred to the States' immunity

---

[6]  Title 29 United States Code section 201 et seq.

from suit as 'Eleventh Amendment immunity.' "[7] (*Alden, supra*, 527 U.S. at pp. 712–713.)  Although a "convenient shorthand," the phrase is, said the court, "something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment.  Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments." (*Id.* at p. 713.)

In other words, the Eleventh Amendment acknowledges and preserves, as against *federal* judicial intrusion, the states' historic sovereign immunity rooted in the common law.  (See also *Stewart, supra,* 131 S.Ct. at p. 1637 ["we have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact"].)

The Supreme Court secondly discussed "isolated statements" made in some opinions, including *Will*, "suggesting that the Eleventh Amendment is inapplicable in state courts." (*Alden, supra*, 527 U.S. at p. 735.)  "This," said the court, "of course, is a truism as to the literal terms of the Eleventh Amendment." (*Id.* 735–736; see also *id.* at p. 742 ["the Eleventh Amendment by its terms addresses only 'the Judicial power of the United States' "].)  The court went on to explain it has also stated many times "the bare text of the [Eleventh] Amendment is not an exhaustive description of the States' constitutional immunity from suit." (*Id.* at p. 736.)  The full extent to which the states' historic sovereign immunity remains intact depends on an analysis of "history, practice, precedent, and the structure of the Constitution"—the question, ultimately, being whether there is " 'compelling evidence' " of "derogation of the States' sovereignty . . . 'inherent in the constitutional compact.' " (*Id.* at p. 741, quoting *Blatchford v. Native Village of*

---

[7] The Eleventh Amendment reads in its entirety:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." (U.S. Const. Amend XI.)

*Noatak* (1991) 501 U.S. 775, 781 [115 L.Ed.2d 686, 111 S.Ct. 2578]; see also *Stewart, supra,* 131 S.Ct. at p. 1637 ["Our cases hold that the States have retained their traditional immunity from suit, 'except as altered by the plan of the Convention or certain constitutional amendments.'"].)

The Supreme Court further observed the historically recognized " 'doctrine of sovereign immunity is an amalgam of two different concepts, one applicable to suits in the sovereign's own courts and the other to suits in the courts of another sovereign.' " (*Alden, supra,* 527 U.S. at p. 738, quoting *Nevada v. Hall* (1979) 440 U.S. 410, 414 [59 L.Ed.2d 416, 99 S.Ct. 1182].) Moreover, "the distinction drawn between a sovereign's immunity in its own courts and its immunity in the court's of another sovereign, as well as the reasoning on which this distinction was based" supports the view "the Constitution reserves to the States a constitutional immunity from private suits in their own courts" which cannot be abrogated by Congress. (*Alden, supra,* 527 U.S. at pp. 739–740; cf. *id.* at p. 746 [Court has "relied on the States' immunity in their own courts as a premise in our Eleventh Amendment rulings"].)

Thus, it is the entire constitutional construct—including, for example, the Tenth Amendment reserving to the States powers not expressly granted to the federal government, as well as the Eleventh Amendment—that charts the "constitutionally" recognized sovereign immunity of the states. (See *Stewart, supra,* 131 S.Ct. at p. 1637; *Alden, supra,* 527 U.S. at pp. 741–745, 748–754.)

Accordingly, for purposes of the instant case, *Alden* demonstrates the Eleventh Amendment is one of several aspects of the federal "constitutional compact" recognizing and preserving the states' historic common law sovereign immunity. (*Alden, supra,* 527 U.S. at pp. 713, 745–754; see also *Stewart, supra,* 131 S.Ct. at p. 1637.) And, specifically, this amendment recognizes and preserves the states' common law immunity with respect to suits brought *in the federal courts*. The amendment does not, itself, apply

17

to actions brought in the state courts.[8] (*Alden,* at p. 742; see also *Stewart, supra,* 131 S.Ct. at p. 1637.)

### 3. *The California Supreme Court's Decision in* Venegas

Because the United States Supreme Court decisions discussed above on (a) the meaning of "person" as that term is used in section 1983 and (b) the scope and import of the Eleventh Amendment are binding on these two federal issues, they necessarily inform our reading of the California Supreme Court's decision in *Venegas*, which the County cites in support of its argument that the Sheriff's Department is "immune" from liability under section 1983.

In *Venegas*, the California Supreme Court considered the following question: "Does a sheriff act on behalf of the state or county when conducting a criminal investigation, including detaining suspects and searching their home and vehicle?" (*Venegas, supra,* 32 Cal.4th at p. 826.) Utilizing the analytical framework the United States Supreme Court employed in *McMillian* in concluding Alabama county sheriffs are representatives of the state when executing law enforcement duties (and which the California court, itself, used in *Pitts* in concluding district attorneys act on behalf of the state when preparing to prosecute and in prosecuting criminal violations of state law), the court concluded "California sheriffs act as state officers while performing state law enforcement duties." (*Venegas,* at p. 839.) We view this as the holding of *Venegas*.

---

[8] Although "sweeping," the states' common law sovereign immunity is not immutable. (*Alden, supra,* 527 U.S. at p. 755 ["certain limits are implicit in the constitutional principle of state sovereign immunity"].) The states may consent to suit, for example, as many have by allowing certain claims to be asserted against state agencies and state officials. States have also consented "to some suits pursuant to the plan of the [constitutional] Convention or to subsequent constitutional Amendments." (*Ibid.*; see also *Stewart, supra,* 131 S.Ct. at pp. 1637–1638.) Among these is the Fourteenth Amendment, which required the states to surrender their sovereign immunity as to federal legislation properly enacted under the amendment's enforcement provision. (*Alden,* at p. 756.) Whether Congress *could* have extended the application of section 1983 to the states under the enforcement provision, however, is not a question the courts need to ponder, since, as a matter of statutory construction, states are not "persons" as that term is used in the statute.

It is a holding wholly consistent with, and, indeed, largely predicated on, the pronouncements of the United States Supreme Court in *McMillian*. (See, e.g., *Venegas, supra,* 32 Cal.4th at pp. 831–834, 838–839.) It is also a holding that necessarily means, under the United States Supreme Court's decision in *Will*, that California sheriffs are not "persons" as that term is used in section 1983 when performing state law enforcement duties and therefore are not subject to damages suits under that statute based on their execution of such duties. (See *Arizonans, supra,* 520 U.S. at p. 69; *Howlett, supra,* 496 U.S. at p. 376; *Ngiraingas, supra,* 495 U.S. at p. 192, fn. 12.)

While the court in *Venegas* cited to *Will*, it did not focus on the United States Supreme Court's holding in that case that states (including state agencies and state officials sued in their official capacity) are not "persons" as that term is used in section 1983. (*Venegas, supra*, 32 Cal.4th at pp. 829–839.) Rather, the California court folded the Eleventh Amendment into its discussion, stating, for example, "*states and state officers* sued in their official capacity are not considered persons under section 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity." (*Id.* at p. 829; see also *id.* at p. 826 ["Under the Eleventh Amendment to the United States Constitution, and the doctrine of sovereign immunity, the state is absolutely immune from tort liability under the federal civil rights act (42 U.S.C. § 1983 . . .)."]); p. 829 [defendants "claim they are immune from liability under the Eleventh Amendment"]; p. 839 [parties "correctly assumed" deputy sheriffs "would not be shielded by the sheriff's own state agent immunity"].)

We consider the references to the Eleventh Amendment in *Venegas* to be non-binding dicta, since that federal constitutional provision was not pertinent to the specific issue before the court, namely whether a California sheriff acts on behalf of the state or a county when conducting a state law criminal investigation. (See *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [262 Cal.Rptr. 754] [observation unnecessary to Supreme Court's decision does not constitute binding precedent]; *People v. Powell* (1986) 180 Cal.App.3d 469, 479 [225 Cal.Rptr. 703] [incidental statements and

19

conclusions not necessary to Supreme Court's decision are dicta and "not to be regarded as authority"].)

But even if the California court's reference to the Eleventh Amendment were considered a holding of *Venegas,* it cannot be viewed as binding in the face of contrary United States Supreme Court authority.  As discussed above, the United States Supreme Court has made it explicitly clear that the Eleventh Amendment, in and of itself, does *not* apply in state court actions, such as *Venegas*.  (E.g., *Alden, supra,* 527 U.S. at pp. 735–736, 742; *Will, supra,* 491 U.S. at p. 63.)  Rather, the Eleventh Amendment speaks only to the right of the states to assert their historic, common law sovereign immunity in the *federal* courts.  (E.g., *Alden,* at pp. 742–743.)

The United States Supreme Court has also stated explicitly that the meaning of the term "person" as used in section 1983 and the scope of the Eleventh Amendment are *separate* issues.  (*Will, supra,* 491 U.S. at p. 68.)  The court has further unequivocally held that a section 1983 claim for damages will not lie against a state, in either federal or state court, because a sovereign is not a "person" as that term is used in section 1983, and *not* because states are "immune" from liability under the Eleventh Amendment or common law sovereign immunity.  (*Will, supra,* 491 U.S. at pp. 64–70; see also *Arizonans, supra,* 520 U.S. at p. 69; *Howlett, supra,* 496 U.S. at p. 376[9]; *Ngiraingas, supra,* 495 U.S. at p. 192, fn. 12).

---

[9] In *Venegas*, the court appears to have inadvertently rephrased, and thus mischaracterized, language from *Howlett.*  Citing *Howlett,* the court stated in *Venegas*: "[S]*tates and state officers* sued in their official capacity are not considered persons under section 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity." (*Venegas, supra,* 32 Cal.4th at p. 829.)  What the United States Supreme Court said in *Howlett,* however, was:  "As we held last Term in *Will* . . . , an entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983." (*Howlett, supra,* 496 U.S. at p. 365.)  This is not a statement that states are not "persons" under section 1983 *because* they are "immune from liability" under the Eleventh Amendment.  On the contrary, the statement simply recognizes that entities with "Eleventh Amendment immunity"—namely states, state agencies and state officials sued in their official capacity—are not "persons" under section 1983, and *that* is so as a matter of *statutory construction.*  (*Will, supra,* 491 U.S.

To the extent *Venegas's* immunity language could be read as suggesting California's own common law sovereign immunity bars a state court section 1983 action against a county sheriff, that is also at odds with United States Supreme Court authority making clear states are not subject to suit under section 1983 because they are not "persons" as that term is used in the statute, *not* because they retain their historic, common law sovereign immunity. (*Arizonans, supra,* 520 U.S. at p. 69; *Hafer, supra,* 502 U.S. at pp. 25–26; *Will, supra,* 491 U.S. at pp. 63–70; *Ngiraingas, supra,* 495 U.S. at p. 192, fn. 12.) Indeed, the United States Supreme Court has held that, under the Supremacy Clause, states cannot enlarge their historic common law sovereign immunity to include lower levels of government in order to render these entities not "persons" and thus not subject to liability for damages under section 1983. "[A]s to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common-law heritage."[10] (*Howlett, supra,* 496 U.S. at p. 383.)

at pp. 63–70; see also *Arizonans, supra,* 520 U.S. at p. 69; *Hafer, supra,* 502 U.S. at pp. 25–26; *Ngiraingas, supra,* 495 U.S. at p. 192, fn. 12.)

[10] We are aware that a number of Court of Appeal opinions have recited *Venegas's* "Eleventh amendment immunity" and "sovereign immunity" language in affirming dismissals against state departments and officials. (E.g., *Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 892 [104 Cal.Rptr.3d 352] ["Because the CHP [as an instrumentality of the State] is absolutely immune from liability under section 1983, plaintiffs have failed to plead a viable section 1983 cause of action against it."]; *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 234 [104 Cal.Rptr.3d 230] [district attorney not a person under section 1983 and may not be found liable under that statute "by virtue of the Eleventh Amendment and the doctrine of sovereign immunity"]; *Bougere v. County of Los Angeles* (2006) 141 Cal.App.4th 237, 242 [45 Cal.Rptr.3d 711] ["It is well established that states and state officers sued in their official capacity are not considered 'persons' for purposes of section 1983 and are immune from liability under that statute by virtue of the Eleventh Amendment . . . and the doctrine of sovereign immunity."]; *Brunius v. Parrish* (2005) 132 Cal.App.4th 838, 859 [34 Cal.Rptr.3d 55] [concluding Mining Board and individual employees acted as arms of State and therefore were "immune" from section 1983 claims]; see also *Kirchmann v. Lake Elsinore Unified School Dist.* (2000) 83 Cal.App.4th 1098, 1100 [100 Cal.Rptr.2d 289] [predating *Venegas* and concluding school district could invoke Eleventh Amendment if sued in

The court in *Venegas* also commented the parties "correctly assumed that the sheriff's *deputies* would not be shielded by the sheriff's own state agent immunity, and are 'persons' who may be held liable for damages under section 1983 for violating someone's constitutional rights." (*Venegas, supra,* 32 Cal. 4th at p. 839.)  We have already discussed the suggestion it is state "immunity" that precludes a section 1983 claim against a county sheriff.  To the extent this comment further suggests deputy sheriffs are not subject to section 1983 claims *because* they are lower level officers, it is also at odds with United States Supreme Court authority.

Whether an individually named state defendant is a "person" within the meaning of section 1983 and thus subject to suit under that statute, depends on whether he or she is sued in his or her "official capacity" or "personal capacity," *not* on his or her particular rank in a state's governmental hierarchy.  (*See Hafer, supra,* 502 U.S. at pp. 25–31; *Ngiraingas, supra,* 495 U.S. at pp. 184–185, 192 & fn. 3 [holding territory of Guam not a "person" under section 1983 and affirming dismissal of official-capacity claims against individual police officers who arrested and interrogated the plaintiffs; personal-capacity claims remanded to determine whether officers were entitled to qualified immunity]; *Will, supra,* 491 U.S. at p. 71; *Brandon v. Holt* (1985) 469 U.S. 464, 471 [83 L.Ed.2d 878, 105 S.Ct. 873] [in prior opinions, court "plainly implied" a judgment against "a public servant 'in his official capacity' imposes liability on the entity that he represents"]; see also *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 188–189

---

federal court and therefore district was not a "person" subject to a section 1983 claim in state court]; *Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 531–542 [65 Cal.Rptr.2d 620] [predating *Venegas* and concluding Housing Authority would not be entitled to "Eleventh Amendment immunity" if sued in federal court and therefore Authority was a "person" subject to a section 1983 claim in state court].)

However, none of these cases examined *Venegas'*s immunity language in light of the binding United States Supreme Court authority we have discussed above.  We therefore decline to follow the analytical road these cases have trod, having concluded it is a mistaken detour and the correct basis for dismissal is that a state is not a "person" as that term is used in section 1983, as a matter of statutory interpretation.

[45 Cal.Rptr.2d 82] [because university is an arm of the state, section 1983 claims against university police officers in their official capacities were properly dismissed].)

"State officers sued for damages in their official capacity are not 'persons' for purposes of [a section 1983] suit because they assume the identity of the government that *employs* them." (*Hafer, supra,* 502 U.S. at p. 27, italics added; see also *Kentucky v. Graham* (1985) 473 U.S. 159, 166 [87 L.Ed.2d 114, 105 S.Ct. 3099] (*Graham*) ["an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"].) Official-capacity suits are therefore "treated as suits against the State." [11] (*Hafer, supra,* 502 U.S. at p. 25; see also *Graham, supra*, 473 U.S. at p. 167 ["[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess"].)

"By contrast, officers sued in their personal capacity come to court as individuals" and are "persons" subject to suit under section 1983. (*Hafer, supra,* 502 U.S. at p. 27.) In fact, in *McMillian*, the United States Supreme Court observed there were numerous individual defendants. But only two, the sheriff and an investigator, were sued in their "official capacity," and only these official-capacity claims were before the high court. (*McMillian, supra,* 520 U.S. at p. 784.) All of the individual defendants, including the sheriff and investigator, however, were also sued in their personal capacities, and these claims continued to proceed independently through the lower federal courts. (*Ibid.*; *McMillian v. Johnson* (M.D.Ala. 1995) 878 F.Supp. 1473.)

This does not mean an individual state defendant sued in his or her personal capacity, such as a police officer or deputy sheriff, must always defend against the substantive merits of a section 1983 claim. "[A]n official in a personal-capacity action

_____

[11] Whether a section 1983 claim against an individual defendant is properly characterized as an official-capacity or personal-capacity claim has also been a matter of considerable discussion by the United States Supreme Court. (E.g., *Hafer, supra,* 502 U.S. at pp. 25–29; *Graham, supra*, 473 U.S. at pp. 165–167; see also *McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1207–1213 [157 Cal.Rptr.3d 720] [the plaintiff's official-capacity claim against superintendent properly dismissed on ground state official not a "person," and allegations did not state a personal-capacity claim].)

may, depending on his position, be able to assert personal immunity defenses," such as "absolute immunity" (available to a "very limited class," including "the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions" (*Hafer, supra,* 502 U.S. at p. 29)) or "qualified immunity." (*Graham, supra*, 473 U.S. at pp. 166–167; see, e.g., *Lane v. Franks* (2014) __ U.S.___ [189 L.Ed2d 312, 134 S.Ct. 2369, 2381–2383] (*Lane*) [defendant entitled to qualified immunity to extent he was sued in his personal capacity; court did not reach claims asserted against the defendant in his official capacity].)

The personal immunity most often raised by law enforcement officers sued in their personal capacities, of course, is "qualified immunity," which the United States Supreme Court has also explored in a wealth of decisions. (E.g., *Carroll v. Carman* (2014) __ U.S.__ [190 L.Ed.2d 311, 135 S.Ct. 348, 349–350] [officer who entered backyard entitled to qualified immunity]; *Plumhoff v. Rickard* (2014) __U.S. __ [188 L.Ed.2d 1056, 134 S.Ct. 2012, 2020, 2023–2024] [even if officer's use of deadly force was excessive, officer entitled to qualified immunity]; *Pearson v. Callahan* (2009) 555 U.S. 223, 231–245 [172 L.Ed.2d 565, 129 S.Ct. 808] [officers who entered home without warrant entitled to qualified immunity; court overrules its decision in *Saucier*[12] to extent it required courts assessing qualified immunity claim to first determine whether constitutional violation was alleged or had occurred]; *Brosseau v. Haugen* (2004) 543 U.S. 194, 198–201 [160 L.Ed.2d 583, 125 S.Ct. 596] [officer who shot fleeing felon entitled to qualified immunity]; *Saucier, supra*, 533 U.S. at pp. 203–209 [arresting officer entitled to qualified immunity].)

In sum, the California Supreme Court's decision in *Venegas* is significant and binding on lower California courts with respect to its holding that county sheriffs are arms of the state while performing state law enforcement activities for purposes of damages liability under section 1983. Its immunity dicta, however, should be left to fade into history.

---

[12] *Saucier v. Katz* (2001) 533 U.S. 194 [150 L.Ed.2d 272, 121 S.Ct. 2151] (*Saucier*).

In this case, the holding of *Venegas* and the United States Supreme Court's decision in *Will*, conclusively establish that, as to the law enforcement actions alleged, the San Mateo County Sheriff's Department is not a "person" under section 1983 and therefore not subject to a suit for damages under that federal statutory provision. (*Will, supra,* 491 U.S. at pp. 64–70; see also *Arizonans, supra,* 520 U.S. at p. 69; *Howlett, supra,* 496 U.S. at p. 376; *Ngiraingas, supra,* 495 U.S. at p. 192, fn. 12.) Accordingly, the County's demurrer on behalf of the Sheriff's Department was correctly sustained without leave to amend.

### The "Doe" Defendants

We lastly consider whether the case should have been dismissed in "its entirety"—an issue that arises because Pierce named not only the Sheriff's Department as a defendant, but also Does 1–12 as individual defendants.

The status of the Doe defendants is not readily discernible from the record on appeal. The County first appeared in response to Pierce's original complaint, which was asserted only against the "Gang Intelligence Task Force Unit in San Mateo County Sheriff's Department." She subsequently made a correction by amendment to name, instead, the "San Mateo County Sheriff's Department (Gang Intelligence Task Force)."

Pierce did not add Doe defendants until she filed her second amended complaint, wherein she named as defendants "San Mateo County and the Individual Members of the San Mateo Gang Task Force sued as Does 1 to 99." The amended complaint alleged two causes of action, against both San Mateo County and the Does for violation of her Fourth Amendment rights. The County demurred to the entire second amended complaint without specifying on whose behalf it was appearing and sought dismissal of the complaint "in its entirety." However, one of the grounds on which it did so was that Pierce had not alleged any policy, custom or practice sufficient to state section 1983 claim against a local governmental entity under *Monell*—an assertion that pertains only to a claim against a local governmental entity or local policymaking official sued in his or her official capacity, not to a local law enforcement officer sued in his or her personal capacity for committing a constitutional tort. This indicates the County was appearing

25

solely for itself (sued as the Sheriff's Department) and was not appearing on behalf of any unnamed individual Doe defendants.

In her third amended complaint, Pierce reduced the number of Doe defendants to 12 and alleged the two section 1983 claims discussed above, the first against the Doe defendants, and the second against the Sheriff's Department alleging a policy or custom under *Monell*. The County again interposed a demurrer as to *both* causes of action, even though the first was asserted only against the individual Doe defendants. While the County argued the factual allegations foreclosed any claim for a wrongful search, it also argued Pierce had "only one claim"—under *Monell* (applicable only to a local governmental entity or local policymaking official sued in his or her official capacity)— that was insufficiently pled. This, again, indicates the County was appearing solely for itself (sued as the Sheriff's Department). And, indeed, it asserted in the conclusion of its memorandum of points and authorities in support of its demurrer, that the third amended complaint "fails to state any cause of action against the County." However, the County again asked that the amended complaint "be dismissed in its entirety" without leave to amend.

The most reasonable conclusion that can be drawn from this record is that neither the County nor the trial court paid any attention to the fact Pierce included Doe defendants. However, "Doe practice" is permitted by statute (Civ. Proc. Code, § 474), and a plaintiff may use such a fictitious name if "ignorant of the name of a defendant." (*Ibid.*; see *Clark v. Stabond Corp.* (1987) 197 Cal.App.3d 50, 56 [242 Cal.Rptr. 676] (*Clark*).) In fact, a complaint can be asserted against only Doe defendants. (See *Pearlson v. Does 1 to 646* (1999) 76 Cal.App.4th 1005, 1010 [90 Cal.Rptr.2d 787].)

In some cases, it may be appropriate to dismiss an action even as to Doe defendants after a successful demurrer by a named defendant, for example, where the basis for the successful demurrer applies equally to the Doe defendants. However, that is not the case here. As discussed above, the law that precludes Pierce's section 1983 claim against the Sheriff's Department—namely the law establishing that a state is not a "person" as that term is used in section 1983 (*Will, supra,* 491 U.S. at p. 71) and the law

26

establishing that a California sheriff represents the state in performing state law enforcement duties (*Venegas, supra*, 32 Cal.4th at p. 839)—applies only to the Department (and any deputies sued in their official capacity) and does not apply to deputies sued in their personal capacity. While the third amended complaint contained no allegations either way (i.e., that the Does were sued in their official capacity or in their personal capacity), it is at least theoretically possible the complaint could be amended to allege a section 1983 claim against the Does in their personal capacity.

Furthermore, as discussed above, the third amended complaint minimally alleges a Fourth Amendment violation. Accordingly, the dismissal as to the Does cannot be affirmed on the ground the complaint fails to state a constitutional claim. This does not mean the alleged civil rights claim can, in fact, be successfully prosecuted against the Does. There may be procedural defenses, such as failure to timely name the individual defendants or lack of diligence in serving the Does. (See, e.g., *Clark, supra,* 197 Cal.App.3d at pp. 57–58). And even if Pierce were to survive such procedural challenges, the individual deputies might be entitled to qualified immunity under section 1983 or to summary judgment on the merits. No such issues, however, are before us at this time, and we conclude only that the trial court erred in dismissing the case in its "entirety" given the Doe defendant allegations.

## IV. DISPOSITION

The judgment of dismissal is affirmed as to the County (sued as the San Mateo County Sheriff's Department). In all other respects, the judgment is reversed. Each party to bear their own costs on appeal.

27

                                 _____

                                 Banke, J.

We concur:


_____

Humes, P. J.


_____

Dondero, J.


A138278, *People v. Pierce*

Trial Judge:                                          Honorable Joseph E. Bergeron

Trial Court:                                          San Mateo Superior Court


Paul McCarthy for plaintiff and appellant.

John C. Beiers, County Counsel and David A. Levy, Deputy County Counsel for defendants and respondents.